OCGKBRIO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BRISTOL COUNTY RETIREMENT
SYSTEM, Individually and on
Behalf of All Others Similarly
Situated,

                    Plaintiffs,

          v.                          24 CV 2804 (MKV)

QUIDELORTHO CORPORATION f/k/a
QUIDEL CORPORATION, et al.,

                                      Argument

                    Defendants.

------------------------------x

MATTHEW WHITFIELD,
Derivatively on Behalf of
Nominal Defendant QuidelOrtho
Corporation f/k/a Quidel
Corporation,

                    Plaintiff,

          v.                          24 CV 3176 (MKV)

KENNETH F. BUECHLER, PH.D.,
et al.,

                    Defendants.

------------------------------x

STEVEN PINKNEY, Derivatively
on Behalf of QuidelOrtho
Corporation f/k/a Ouidel
Corporation,

                    Plaintiff,
          v.                          24 CV 4753 (MKV)

DOUGLAS BRYANT, et al.,

                    Defendants.
------------------------------x

OCGKBRIO

New York, N.Y.
December 16, 2024
11:00 a.m.

Before:

HON. MARY KAY VYSKOCIL,

District Judge

APPEARANCES

LABATON KELLER SUCHAROW LLP
      Attorneys for Plaintiff Movants Teamsters Local 710
Pension Fund and Central States, Southeast and Southwest Areas
Health and Welfare Fund
BY:   CONNOR C. BOEHME
      LAUREN AMY ORMSBEE
      FRANCIS PAUL McCONVILLE

RIGRODSKY LAW PA
      Attorneys for Plaintiff Whitfield
BY:   VINCENT LICATA

THE BROWN LAW FIRM PC
      Attorneys for Plaintiff Steven Pinkney
BY:   TIMOTHY WILLIAM BROWN
      JOHN C. COYLE IV

GIBSON DUNN & CRUTCHER LLP
      Attorneys for QuidelOrtho Defendants
BY:   COLIN DAVIS
      DANA SHERMAN

(Case called)

THE COURT:  Good morning.  Why don't I take appearances first in the Bristol County case, and then we'll do the derivatives.

MR. BOEHME:  Good morning, your Honor.

My name is Connor Boehme.  I'm here on behalf of the lead Plaintiff Movants Teamsters Local 710 Pension Fund and Central States, Southeast and Southwest Areas Health and Welfare Fund, collectively the Teamsters Funds.  I'm here with two partners from Labaton Keller Sucharow, Lauren Orsbee and Francis McConville.

THE COURT:  Good morning to all of you.

MS. ORMSBEE:  Good morning, your Honor.

MR. McCONVILLE:  Good morning.

MR. DAVIS:  Good morning, your Honor.  Colin Davis and Dana Sherman, from Gibson Dunn & Crutcher, on behalf of the defendants.

THE COURT:  Good morning.

And is there someone for Nova Scotia Health Employees' Pension Plan?

No?

Okay.  All right, Ms. Dempsey.  You want to call the Whitfield.

THE DEPUTY CLERK:  Plaintiffs in the case of Whitfield.

OCGKBRIO

MR. LICATA:  Good morning, your Honor.  Vincent Licata, from Rigrodsky Law, for Plaintiff Matthew Whitfield in the derivative case.

THE COURT:  Good morning.

THE DEPUTY CLERK:  Defendant?

MR. DAVIS:  Good morning, your Honor.  Colin Davis and Dana Sherman, from Gibson Dunn, on behalf of the defendants.

THE COURT:  Okay.  You're representing them in that, as well?

MR. DAVIS:  Yes.

THE COURT:  Okay.  Thank you.

THE DEPUTY CLERK:  The plaintiffs in Pinkney v. Bryant.

MR. BROWN:  Good morning, your Honor.  Tim Brown, of The Brown Law Firm, representing Plaintiff Steve Pinkney in the Pinkney derivative matter.

THE COURT:  Thank you.  Good morning.

MR. COYLE:  John Coyle, from The Brown Law Firm as well, your Honor.

THE COURT:  Good morning, Mr. Coyle.

And you are representing the defendant in this case as well?

MR. DAVIS:  Yes, your Honor.

THE COURT:  All right.  So, good morning to everybody.

I have, as you know, before me these three cases, the

OCGKBRIO

Bristol County Retirement Systems case, in which we had two movants, one of whom apparently is not appearing.

Let me ask you, sir, have you spoken with them?

MR. BOEHME:  Good morning.

We have not spoken to them recently.  We did note that there was a notice of nonopposition to our motion --

THE COURT:  Right.

MR. BOEHME:  -- but have not heard anything subsequent from them.

THE COURT:  All right.  So, in the Bristol County Retirement Systems case, the securities fraud case, I have two competing motions for appointment as lead plaintiff and approval of each of the respective lead plaintiffs' counsel as lead counsel in the case.

How do you say your name?

MR. BOEHME:  Boehme, as in name.

THE COURT:  Boehme?

MR. BOEHME:  Yes.

THE COURT:  As Mr. Boehme has just stated on the record, the Nova Scotia Health Employees' Pension Plan did file a notice of nonopposition to the motion by the Teamsters Funds for appointment as lead plaintiff.  They acknowledge that the Teamsters Funds has the largest investment in this company. They also concede that they can't rebut the presumption that the Teamsters Funds should be lead plaintiff.  And they

acknowledge that the Teamsters Funds can satisfy the requirements of Rule 23.  They have elected not to appear today.

So, I will just say that, having filed this nonopposition to the Teamsters Funds motion, the Nova Scotia Health Employees' Pension Plan did not withdraw its own motion for appointment as lead plaintiff and for approval of its counsel as lead counsel.

In light of their nonappearance today and their statement of nonopposition, which they did file, it seems that the motion of the Teamsters Funds is in order and should be granted, but I'm going to give you the opportunity to just make a record, and I will then enter an order after we adjourn.

MR. BOEHME:  Absolutely, your Honor.

Would you like me to step up to the podium?

THE COURT:  It's up to you.  You can do it from there.

MR. BOEHME:  Thank you.

THE COURT:  You don't need to be lengthy here.

MR. BOEHME:  Right.

The motion of the Teamsters Funds should be approved because not only is it unopposed, but they meet each of the PSLRA's requirements to be appointed, as they moved by the deadline for lead plaintiff appointment, which was June 11th of this year.  They made a motion on that day.

As the Court has already stated, only one other movant

OCGKBRIO

came forward on that day.  That movant has since filed a notice of nonopposition.  And regardless of that, the Teamsters Fund had a larger financial interest, of $2.4 million.

The only final requirement is that the Teamsters Funds meet the prima facie Rule 23 typicality and adequacy requirements.  Both are met here.

Typicality is met because, like all class members, the Teamsters Fund purchased QuidelOrtho common stock at allegedly inflated prices and then suffered harm when the fraud underlying these allegations was revealed.  Adequacy is met because the Teamsters Funds, with their substantial loss, are incentivized to vigorously litigate this case.  They have selected experienced counsel in Labaton Keller Sucharow, and there are no conflicts of interest between them and the rest of the class.  In fact, their interests are squarely aligned. There has been no rebuttal evidence presented against the Teamsters Funds.  And, therefore, they meet all of the PSLRA's requirements for lead plaintiff appointment.

THE COURT:  All right.  Thank you.

MR. BOEHME:  Thank you.

THE COURT:  I do find that the Teamsters Fund is an appropriate lead plaintiff in this case.  As you say, it meets all of the requirements of Rule 23, and presumptively is an appropriate lead plaintiff in that it has the largest financial stake in the claims that have been asserted.

OCGKBRIO

There is no opposition to the motion.  In fact, the only other party that moved to be lead plaintiff has filed a statement of nonopposition.

So, that motion is granted.

Now, let me turn to the derivative plaintiffs.  You have each moved to consolidate the two derivative cases, correct?

MR. BROWN:  Your Honor, that's correct.  We stipulated to consolidate the two derivative cases as well as to requesting the Court, in the stipulation, to appoint the two firms representing the two plaintiffs in the two respective derivative cases as co-lead counsel for plaintiffs in the consolidated action, were it to be consolidated.

THE COURT:  Now, the question I have for you is:  The Teamsters Fund has separately moved in its case to consolidate "all cases that arise out of the subject matter of the securities action."  Arguably, that's broad enough to encompass the derivative cases.

Do you oppose consolidation with the derivative cases?

MR. BROWN:  Your Honor, we believe that the cases, the derivative cases, should not be consolidated with the securities fraud class action.  My supposition is that the intention of the Teamsters plaintiff -- movant was not for the derivative matters to be consolidated with the class action but, rather, for any shareholder actions that are based not

OCGKBRIO

only on the same factual allegations but also the same legal claims, and in the derivative action, the legal claims are in some regards kind of opposite of the class action.

THE COURT:  Tell me what you mean by that.

MR. BROWN:  Well, sure, your Honor.

For example, in the securities fraud case, QuidelOrtho is, you could say, the primary defendant.  In our case, we specifically refer to this defendant as the nominal defendant.

THE COURT:  Right.  That's what happens in a derivative case.

MR. BROWN:  Right, your Honor.

And so, in the derivative litigation, the nominal defendant is actually the primary beneficiary --

THE COURT:  But that's always true in a derivative case.  And the corporation acts through its officers and employees.

MR. BROWN:  Yes, your Honor.

But the nature of prosecuting claims in the class action and the nature of prosecuting the claims in a derivative action are such that the nominal defendant would actually -- if the demand futility allegations we make are alleged to be sufficient, if your Honor finds them sufficient, then our case, once it moves forward, QuidelOrtho would not be presumably represented by the same counsel as the individual defendants, the individual defendants would be vigorously defending our

OCGKBRIO

claims, and QuidelOrtho would be benefiting from whatever recovery we were to obtain for them, were we to obtain a recovery.

THE COURT:  All right.  So there's some logic to what you're saying in terms of the ultimate merits resolution, but in terms of the discovery that's going to take place, isn't it basically the same in the two cases or the two sets of cases?

MR. BROWN:  Your Honor, I don't disagree with -- I agree.  Maybe some of the emphasis of discovery that we would seek may be a little different.  For example, we may be focused a lot on knowledge and actions and benefits received by members of the board of directors, and they may be focused on other defendants — say, officer defendants — whose knowledge would be imputed to the company.

But, yes, much of the discovery would be overlapping, that's correct.

THE COURT:  All right.  Let me hear from Mr. Boehme on what your position is.

First of all, what did you mean by your motion?  I don't know that the derivative cases were on file at the time you moved.  I honestly don't know; I'm not saying they weren't. There is some logic to what counsel is saying about the different potential conflicts, but, on the other hand, the discovery, it seems to me, is going to be the same.

MR. BOEHME:  Your Honor, that's correct, that they

OCGKBRIO

were filed after our motion; and when we sought consolidation, we were thinking about other securities class action lawsuits. In our view, there's a different plaintiff situation between derivative and direct class actions, like --

THE COURT:  So, you don't want them consolidated?

MR. BOEHME:  No.  However, the Court's point about discovery is well taken, and post a motion to dismiss in the federal class action case, potentially discovery could be coordinated just for efficiency reasons.

THE COURT:  All right.  You can have a seat.

First of all, I'll grant the motion by the derivative plaintiffs to have your cases consolidated one with the other, and you can be co-lead counsel and plaintiffs.

In terms of, though, the two tracks, then, the securities case and the derivative case, often what happens in this district is the derivative cases get stayed.  Frankly, I don't see that as an efficient way to proceed.  Of course, if the securities case turns out to be unsuccessful, then your case might well fall.  If it settles, that has to be worked out, but in terms of discovery, it doesn't seem to make sense to me to stay the derivative cases and then potentially have to do another whole round of discovery afterwards.  So, I'm not inclined to stay the cases, and I am inclined to consolidate for purposes of discovery.

Anybody want to be heard?

OCGKBRIO

MR. DAVIS:  Your Honor, I guess all that I would say is that we do think it is appropriate to stay, subject to the parties' agreement or the Court's order, the derivative cases during the pendency of the motion to dismiss in the securities class action.  In the event that the motion to dismiss in the securities class action is successful, in our experience, most of the derivative cases tend to go away.

THE COURT:  Right.  That was my point.

MR. DAVIS:  And so it doesn't seem to make a lot of sense to brief on parallel tracks, demand futility in the derivative cases and the merits in the securities case, in the event that the merits resolution in the securities case disposes of the derivative case.

So, we would request that those cases be stayed during the pendency of the motion to dismiss in the securities case, but post that point, we can either brief up demand futility and coordinate discovery, as your Honor suggests.

THE COURT:  Counsel?

MR. BROWN:  Your Honor, we haven't come to a conclusion amongst ourselves — plaintiffs counsel, that is — on this point, but I think we've discussed --

THE COURT:  Now is the time.  This conference was scheduled.

MR. BROWN:  Yes, your Honor.  I apologize.  We hadn't planned on discussing more than the concepts of the issues of

OCGKBRIO

consolidation and leadership, but I appreciate that this is an appropriate time, as well, to think about how the case would proceed.

I think that if we were to agree to the stay that counsel for defendants propose would be appropriate in this consolidated derivative matter, there would be certain terms that we would want them to agree to, just because the act of having our case step back voluntarily, we would want to make sure that it wouldn't potentially prejudice us if perhaps, let's say, another derivative matter were to proceed in another court and move forward while we were, for the sake of efficiency, consenting to counsel for defendants' proposal.

THE COURT:  You can always make a motion to lift a stay.

Is that what you're getting at?

MR. BROWN:  I think there would be certain terms, your Honor, such as -- in addition to having that opportunity, but we would probably ask defendants for certain terms, such as receipt of document production if another derivative plaintiff received it, or if a shareholder --

THE COURT:  But, wait a minute, wait a minute.  Who can consent to that?

MR. BROWN:  Your Honor, I believe that if a confidentiality agreement, for example, were to be negotiated between plaintiffs and defendants in this matter --

OCGKBRIO

THE COURT:  In the securities case?

MR. BROWN:  No, I'm sorry, your Honor, I apologize.  I wasn't clear.

In this matter, in this derivative matter, let's say, for example, that defendants were to provide documents to a shareholder that requested books and records related to the subject matter alleged by our plaintiffs, then we would request that they would, subject to a reasonable confidentiality agreement, produce the same to us if we were to agree to the stay proposal.  That way, we can sort of keep on track with what's going on, not have anyone move forward, and also not waste time.

THE COURT:  Counsel?

MR. DAVIS:  Your Honor, I would say it's a bit of a moot point at the moment.  There are no pending 220 demands to the company related to the subject matter of this action.  There are no other pending derivative cases in any other court.

THE COURT:  Here's what I'm going to do:  I already dealt with the motion for lead plaintiff and appointment of counsel.  Again, your motion to consolidate is a little premature because there aren't any other cases, but I'll include it in the order -- well, when you say all cases, do you mean in this district?

Have a seat for a minute.

MR. BOEHME:  Yes, your Honor, I believe that the Court

OCGKBRIO

can only consolidate cases within the --

THE COURT:  Yes.  And I can't do that until there are cases filed and I consult with the judge to whom the case gets assigned.

So, I'm not going to enter that part of the order.  If another case gets filed, come back to me --

MR. BOEHME:  Understood.

THE COURT:  -- or file a statement of relatedness, or file it in the other case and then the two judges will deal with whether they get reassigned and consolidated.

MR. BOEHME:  Understood.

THE COURT:  All right.  So, I'm not entering that part of the order.

With respect to the derivative cases, as I said, they can be consolidated one with the other.  You can be co-lead plaintiff, but the cases are stayed.

In that order, I will include a line that counsel for the company is to advise you of any derivative cases that are subsequently filed.  And then you can make whatever motions you want to make at that time.

MR. BROWN:  Your Honor, may I ask one question?

THE COURT:  Sure.

MR. BROWN:  Counsel for defendants had suggested that in this matter it would be appropriate for the case to be stayed through the pleading stage in the class action, meaning

OCGKBRIO

until the motions to dismiss were resolved.  And I was just seeking clarification of what you just said --

THE COURT:  I'm just going to stay it for now, and then, should a motion to dismiss be denied, then the issue that I raised with you about discovery happening on parallel tracks not making sense, becomes a live issue.  You can make a motion to lift the stay at that time.

MR. BROWN:  Okay, your Honor.  Thank you.

THE COURT:  All right.

Anything else, then, that we can accomplish?

MR. BOEHME:  No, not from us, your Honor.

THE COURT:  All right.

I don't have a letter requesting leave to move to dismiss, right?

MR. DAVIS:  Not at this point, your Honor.  The Court has entered a stipulation providing that once a lead plaintiff is appointed, the lead plaintiff will file -- or a consolidated complaint, and then we'll negotiate a briefing schedule for a motion to dismiss, in the event one --

THE COURT:  Yes, but what is he consolidating right now?  This is the only case, so we don't need an amended consolidated complaint, right?

MS. ORMSBEE:  Your Honor, the Teamsters Funds do intend to file an amended complaint.  The initial complaint was filed back in April or May of this past year.  Now that we've

OCGKBRIO

been appointed lead plaintiff in the order — we expect today — we have been investigating the matter further, developing our facts, and we do intend, as is the normal course, to file an amended complaint pursuant to the ECF Document 14, which is the stipulation the Court so ordered.  As soon as the order is in place, we will coordinate with defense counsel, and no later than 14 days from today, likely before, will enter a stipulation that would provide for a timeline for us to file our amended complaint and for a briefing schedule of the motion to dismiss for your Court's review and approval.

THE COURT:  Okay.  That is fine.

But I'm just warning you, in the stipulated schedule, don't push things out unreasonably.

MS. ORMSBEE:  We will not, your Honor.  The next two weeks is a little hard for us to confirm some of our facts, but it won't be very long.  It will be in the first month, month and a half of the year.

THE COURT:  All right.

And then the other thing — obviously, you're all experienced counsel, you've done this lots of times before — you should be talking to each other and see if there is a path forward to resolving things.  In the scheme of things, this is not an exorbitantly large claim that you've brought, although I don't know what the investments by other class members might be.  But in any event, if there's anything the Court can do to

OCGKBRIO

facilitate that, we're available to you.

MS. ORMSBEE:  Appreciate that, your Honor, and duly noted.

MR. DAVIS:  Thank you.

THE COURT:  Anything further from anybody?

MR. DAVIS:  No.

THE COURT:  No?  All right, we'll stand adjourned then.

Thank you very much, Mr. Walker.

Counsel, please order a copy of the transcript and provide it to the Court and file it on the docket.

Thank you.

COUNSEL:  Thank you, your Honor.

(Adjourned)