**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE QUIDELORTHO CORPORATION
SECURITIES LITIGATION

No. 24-cv-02804-JAV

<u>ORAL ARGUMENT REQUESTED</u>

---

## <u>LEAD PLAINTIFF'S MOTION TO STRIKE THE DECLARATION OF COLIN B. DAVIS, EXHIBITS ATTACHED THERETO, AND DEFENDANTS' APPENDIX A PURSUANT TO RULES 12(D) AND 12(F)</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    LEGAL STANDARD........................................................................................ 2

III.   ARGUMENT..................................................................................................... 4

      A.     Defendants' Two-Sentence, Footnote Request for Judicial Notice and
            Incorporation by Reference Should Not Be Considered......................................... 4

      B.     Exhibits 1-2, 5-6, 8, 36, 45-46 Should Be Stricken As They Are Not
            Referenced In The Complaint And Are Not Suitable For Judicial Notice ............. 6

      C.     Defendants Misuse Exhibits 30, 33, 37 and 43 To Improperly Dispute
            Well-Pled And Well-Sourced Factual Allegations, And They Should Be
            Stricken ................................................................................................................ 11

      D.     Exhibits 3-4, 7, 9-29, 31-32, 34, 35, 38-42, And 44 Should Not Be
            Considered For The Truth Of The Matters Asserted ........................................... 12

      E.     The Court Should Strike or Exclude Defendants' Appendix A............................ 17

IV.    CONCLUSION................................................................................................ 17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ace Arts, LLC v. Sony/ATV Music Pub., LLC*,
    56 F. Supp. 3d 436 (S.D.N.Y. 2014)...................................................................................7

*Braun v. United Recovery Sys., LP*,
    14 F. Supp. 3d 159 (S.D.N.Y. 2014)..................................................................................4

*Cipla USA, Inc. v. Ipsen Biopharmaceuticals, Inc.*,
    2024 WL 307699 (D. Del. Jan. 26, 2024)..........................................................................9

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)...............................................................................................6

*Diesel v. Town of Lewisboro*,
    232 F.3d 92 (2d Cir. 2000).................................................................................................5

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)...............................................................................................4

*DiGiacinto v. RB Health (US) LLC*,
    2023 WL 7141263 (N.D. Cal. Oct. 30, 2023)....................................................................5

*F.T.C. v. Tax Club, Inc.*,
    994 F. Supp. 2d 461 (S.D.N.Y. 2014)................................................................................5

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
    848 F.2d 24 (2d Cir. 1988).................................................................................................3

*Forge Underwriting Ltd. v. AmTrust Fin. Servs., Inc.*,
    2023 WL 6890844 (S.D.N.Y. Oct. 19, 2023) ...................................................................4

*Fortis Corp. Ins., S.A. v. M/V Cielo Del Canada*,
    320 F. Supp. 2d 95 (S.D.N.Y. 2004)...............................................................................10

*GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*,
    918 F.3d 92 (2d. Cir. 2019)................................................................................................3

*In re Interest Rate Swaps Antitrust Litig.*,
    261 F. Supp. 3d 430 (S.D.N.Y. 2017).....................................................................2, 12, 16

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ...........................................................................................12

*Leonard F. v. Israel Discount Bank of New York,*
  199 F.3d 99 (2d Cir. 1999)..................................................................................6

*McFall v. Perrigo Co.,*
  2021 WL 2327936 (C.D. Cal. Apr. 15, 2021) .........................................................10

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,*
  815 F .Supp. 2d 679 (S.D.N.Y. 2011)...................................................................4

*Onosamba-Ohindo v. Searls,*
  678 F. Supp. 3d 364 (W.D.N.Y. 2023)..................................................................5

*In re OSI Pharms., Inc. Sec. Litig.,*
  2007 WL 9672541 (E.D.N.Y. Mar. 31, 2007)........................................................8

*Philpot v. Alternet Media, Inc.,*
  2018 WL 6267876 (N.D. Cal. Nov. 30, 2018) .......................................................5

*Primmer v. CBS Studios, Inc.,*
  667 F. Supp. 2d 248 (S.D.N.Y. 2009)...................................................................5

*Reilly v. U.S. Physical Therapy, Inc.,*
  2018 WL 3559089 (S.D.N.Y. July 23, 2018) ........................................................8

*Roth v. Jennings,*
  489 F.3d 499 (2d Cir. 2007)................................................................ *passim*

*Schneidermesser v. NYU Grossman Sch. of Med.,*
  2024 WL 4054372 (S.D.N.Y. Sept. 5, 2024).........................................................3

*In re UBS Auction Rate Sec. Litig.,*
  2010 WL 2541166 (S.D.N.Y. June 10, 2010) .....................................................3, 7

*White v. Mylan, Inc.,*
  2012 WL 6951323 (W.D. Okla. Dec. 28, 2012)......................................................5

*In re Wonderwork, Inc.,*
  611 B.R. 169 (Bankr. S.D.N.Y. 2020)..................................................................5

*Zak v. Chelsea Therapeutics, Ltd.,*
  780 F.3d 597 (4th Cir. 2015) ............................................................................12

## Other Authorities

FED. R. CIV. P. 12(d) ...........................................................................................3

FED. R. CIV. P. 12(f)............................................................................................3

FED. R. EVID. 201(b) .........................................................................................3, 7

iii

## I.    INTRODUCTION

In their Motion to Dismiss the Amended Class Action Complaint ("DB" or "Motion," ECF Nos. 47-48), Defendants make a sweeping request—lodged in two sentences within a footnote—that the Court incorporate by reference *46 documents* purportedly cited in the Complaint (the "Exhibits") and/or, in the alternative, consider "public disclosure documents required by law to be, and that have been, filed with the SEC[.]" DB 3, n.1.[1] Filed contemporaneously with Defendants' Motion was the Declaration of Colin B. Davis ("Davis Decl."), Defendants' outside counsel, which attaches the Exhibits for review by the Court (ECF No. 49), and "Defendants' Appendix A" (ECF No. 48-1), a document that claims to set forth the 104 Misstatements alleged in the Complaint, but liberally adds extraneous language to the Misstatements throughout, without noting what language was added by Defendants and what was contained in the Complaint, and further raises improper and inaccurate factual arguments within the document based on the Exhibits. *See, e.g.*, Defendants' Appendix A at 10 n.2; 11 n.3; 12 n.4; 26 n.7-8; 32 n.9; 33 n.10.

Defendants' attempt to introduce the Exhibits through the Davis Declaration and Defendants' Appendix A—and then use those documents to set forth a counter-narrative of facts and arguments in conflict with the Complaint's allegations—falls far short of the legal standards for judicial notice and incorporation by reference and should be rejected. *First*, Defendants' argument for incorporation and judicial notice should be disregarded, along with the Davis Declaration, Exhibits, and Defendants' Appendix A, because the relief sought is made solely in a footnote with no substantive legal or factual support. *Second*, for the eight exhibits not referenced

---

[1] Unless otherwise noted, emphasis has been added, internal citations and quotation marks are omitted, and all capitalized and defined terms have the meaning ascribed in the Complaint (ECF No. 42) or in the Glossary of Certain Defined Terms in Lead Plaintiff's Opposition to Defendants' Motion, filed contemporaneously herewith.

or relied upon in the Complaint (Exhibits 1-2, 5-6, 8, 36, 45-46), Defendants fail to satisfy the legal standard for judicial notice. ***Third***, Defendants' attempt to cast doubt on the content of four investor call transcripts by attaching incomplete or inaccurate versions of those transcripts (Exhibits 30, 33, 37, 43) should be rejected; the Complaint accurately quotes from those call transcripts and Plaintiff has submitted, as exhibits to the Declaration of Lauren A. Ormsbee ("Ormsbee Decl."), the source documents for corroboration of the Complaint's accurately pled allegations. ***Fourth***, as to the remaining Exhibits that are referenced, at least in passing, within the Complaint (Exhibits 3-4, 7, 9-29, 31-32, 35, 38-44), Defendants' attempt to utilize them for the truth of matter asserted should be rejected because "on a motion to dismiss . . . defendants may not use plaintiffs' sources as an archive from which to build what amounts to a factual rebuttal." *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 481 (S.D.N.Y. 2017). ***Finally***, Defendants' Appendix A, which improperly relies on most of the challenged Exhibits, should be excluded for the same reasons as stated above. Plaintiff submitted its own Appendix A with its opposition to Defendants' motion to dismiss, which contains the challenged Misstatements, <u>*as quoted in the Complaint*</u>, along with an identification of where those Misstatements are cited in the Complaint, in Defendants' Motion, and in Plaintiff's brief in opposition, for the Court's convenience.

Accordingly, pursuant to Fed. R. Civ. P. 12(d) and (f), Plaintiff requests that the Court strike the Davis Declaration, the Exhibits attached thereto, and Defendants' Appendix A for the reasons discussed herein. To the extent granted, Defendants' factual and legal arguments in their Motion that rely on these Exhibits and Appendix arguments should be excluded from the Court's analysis.

## II.    LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a

pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f); *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 95 (2d. Cir. 2019). "Whether to grant or deny a motion to strike is vested in the trial court's sound discretion." *Schneidermesser v. NYU Grossman Sch. of Med.*, 2024 WL 4054372, at *1 (S.D.N.Y. Sept. 5, 2024).

Rule 12(d) of the Federal Rules of Civil Procedure provides that in resolving a motion to dismiss under Rule 12(b)(6), courts generally may not consider materials extrinsic to the complaint, without converting the motion to "one for summary judgment under Rule 56" where "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). Therefore, the Court may strike or exclude matters presented outside the pleadings on a 12(b)(6) motion to dismiss. *In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *16 (S.D.N.Y. June 10, 2010); *see also Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment ....").

There are two exceptions to the general rule that a court may *not* consider materials beyond the pleadings: judicial notice pursuant to Federal Rule of Evidence 201 and incorporation-by-reference.

The doctrine of judicial notice is limited and applies only to adjudicative facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(1)-(2). However, "[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary

evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 164 (S.D.N.Y. 2014) (quoting *Canadian St. Regis Bank of Mohawk Indians v. N.Y.*, 2013 WL 3992830, at \*12 (N.D.N.Y. July 23, 2013)).

Additionally, "incorporation by reference must meet an 'exacting standard'; vague references to documents not specifically identified do not suffice." *Forge Underwriting Ltd. v. AmTrust Fin. Servs., Inc.*, 2023 WL 6890844, at \*5 (S.D.N.Y. Oct. 19, 2023) (citing *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 163 (S.D.N.Y. 2014)). Furthermore, a Court may consider a document attached to the complaint, incorporated by reference or integral to the complaint, only when there is no dispute regarding its authenticity, accuracy or relevance. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal citations omitted). "To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the documents." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F .Supp. 2d 679, 691 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).

## III.    ARGUMENT

### A.    Defendants' Two-Sentence, Footnote Request for Judicial Notice and Incorporation by Reference Should Not Be Considered

Defendants bury their sweeping request for incorporation by reference and/or judicial notice of 46 Exhibits in a footnote introducing the Davis Declaration. *See* DB at 3, n.1. This footnote omits the mention of ***any*** particular Exhibit, forcing the Court and Plaintiff to speculate as to why these documents should be considered and on what grounds. Indeed, Defendants ***nowhere*** acknowledge that eight of these Exhibits are not referenced in the Complaint at all. Moreover, Defendants' Appendix A purports to quote each alleged Misstatement, but misleadingly fails to indicate where and the extent to which Defendants have liberally added to

4

the Misstatement language quoted in the Complaint.

"It is well settled . . . that a court need not consider arguments relegated to footnotes or raised for the first time in a reply brief." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 n.1 (S.D.N.Y. 2014); *see also Onosamba-Ohindo v. Searls*, 678 F. Supp. 3d 364, 374 (W.D.N.Y. 2023) (same); *In re Wonderwork, Inc.*, 611 B.R. 169, 216 (Bankr. S.D.N.Y. 2020) ("[T]he Court will not consider an argument relegated to a footnote in a forty-page brief."); *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 256 n.4 (S.D.N.Y. 2009) ("[B]ecause the argument is made wholly in a footnote ... the Court may choose to disregard it."); *cf. Diesel v. Town of Lewisboro*, 232 F.3d 92, 110 (2d Cir. 2000) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").

The fact that Defendants relegated their request—to introduce 46 documents into the Court's assessment of the adequacy of the Complaint's allegation—into a footnote, without any "clear explanation of which facts . . . it contends are judicially noticeable precludes the court's ability to . . . determine whether the unspecified facts are subject to judicial notice" compels rejection of the request in its entirety. *DiGiacinto v. RB Health (US) LLC*, 2023 WL 7141263, at *3 (N.D. Cal. Oct. 30, 2023). *See also Philpot v. Alternet Media, Inc.*, 2018 WL 6267876, at *5 n.1 (N.D. Cal. Nov. 30, 2018) (rejecting defendant's request for judicial notice "state[d] in a footnote in its motion to dismiss" on the basis that "[defendant] submits no formal request for judicial notice" and "does not explain what, if anything, the Court is supposed to infer from [the extrinsic evidence proffered]"); *White v. Mylan, Inc.*, 2012 WL 6951323, at *4 n.5 (W.D. Okla. Dec. 28, 2012) (declining to consider at a motion to dismiss, defendant's request for judicial notice—"explained only in a footnote"—of materials available on the FDA's website, based on unrelated pleading deficiencies, but explaining that "[s]hould the case reach that point, the Court

5

would expect Mylan to file a motion requesting such relief and to comply with the procedural requirements of Rule 201, rather than simply including the argument in a brief supporting a different motion.").

Notably, Defendants' own two cited cases (DB 3 n.1) ***support rejection*** of their request. In *Leonard F. v. Israel Discount Bank of New York*, the Second Circuit vacated the district court's judgment because the district court made an improper factual determination of a matter asserted by defendants on a motion to dismiss, without converting the motion into a motion for summary judgment and giving plaintiff an opportunity to develop facts and contest the asserted fact. 199 F.3d 99, 107 (2d Cir. 1999). Moreover, in Defendants' sole other cited case, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014), the court merely notes that a court may in some circumstances consider documents properly incorporated by reference or implicitly judicially noticed, but does not address any such request or what a party must do to meet those standards.

For these reasons, Defendants' request for incorporation by reference and/or judicial notice should be denied, and the Davis Declaration and its 46 Exhibits should be stricken along with Defendants' Appendix A (which relies on and cites liberally from those 46 Exhibits) and the factual arguments within the Motion that rely on those documents. In its discretion, the Court's analysis may stop here.

In the alternative, the Court should strike the Exhibits and Defendants' Appendix A, and all of the factual and legal arguments within the Motion that rely on those documents, for the additional reasons stated below.

**B.      Exhibits 1-2, 5-6, 8, 36, 45-46 Should Be Stricken As They Are Not Referenced In The Complaint And Are Not Suitable For Judicial Notice**

Eight Exhibits are *prima facie* unsuitable for incorporation by reference because they are

not referenced in, nor relied upon in the Complaint. *UBS Auction Rate*, 2010 WL 2541166, at *14. These Exhibits include a news article (Exhibit 2), pre-Class Period SEC filings (Exhibits 1, 8), pre- and post-Class Period conference call transcripts (Exhibits 5, 45) an investor presentation (Exhibit 6), a press release (Exhibit 36), and a pre-Class Period stock quote for QDEL shares from the Company's website (Exhibit 46). These documents are not otherwise suitable for judicial notice to the extent Defendants ask the Court to accept them for the truth of the matter asserted.

Federal Rule of Evidence 201 allows the Court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). However, while courts may, when appropriate, take judicial notice, "[i]f the court takes judicial notice, it does so in order 'to determine what statements [the documents] contained'—but '[ ] not for the truth of the matters asserted.'" *Roth v. Jennings*, 489 F.3d 499, 509-11 (2d Cir. 2007); *see also Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 442 (S.D.N.Y. 2014), *abrogated on other grounds by Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85 (2d Cir. 2023) ("[I]t is inappropriate to discredit the factual allegations of a complaint merely because they are contradicted by assertions made in judicially noticeable documents.").

The doctrine of judicial notice is inappropriate for Exhibits 1-2, 5-6, 8, 36, 45-46 because Defendants use these documents for the sole purpose of constructing their own factual narrative and rebutting the Complaint's well-pled allegations.

For example, Defendants cite Exhibit 2, a July 13, 2021 *PharmaTimes* Article in support of their statement that the RVP4 EU launch, discussed at length in the Complaint, "was intended to help the Company understand how to improve Savanna and prepare for a larger U.S. launch."

7

DB 4 (citing ¶10 & Ex. 2). Defendants attribute ¶10 of the Complaint as additional support for this statement, but ¶10 *alleges no such thing*, stating, to the contrary, that "unheeded warnings" of RVP4 "design flaws" "proved to be spot on and reflected in the European launch" and:

> Defendants' rosy accounts of positive European customer feedback on RVP4 could not have been farther from the truth. The Savanna launch was limited, selling approximately 40 Savanna analyzers to a few customers in Austria, Germany, and Italy in the last quarter of 2021 and the first quarter of 2022, and expanding that base only slightly, selling approximately another 40–50 analyzers in 2023. Numerous former employees describe how European customer complaints began right away and continued unabated, and even increased, throughout the Class Period.

Defendants' attempted subterfuge, misleadingly correlating the Complaint's allegations with this extrinsic document should not be countenanced, and supports this motion to strike. *See Roth*, 489 F.3d at 511 (finding district court improperly considered representations in defendants' filings for the truth of their assertions); *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *10 (S.D.N.Y. July 23, 2018) (judicially noticing news articles but refusing to consider them as support for defendants' substantive argument).

Similarly, Defendants rely on Exhibit 5, a January 12, 2022 transcript of the Bloomberg J.P. Morgan 40th Annual Healthcare Conference, to argue that "QuidelOrtho *repeatedly* disclosed that it faced constraints on its manufacturing capabilities." DB 22. While the Court need not consider a conference call transcript that was not referenced in the Complaint, Defendants' use of Exhibit 5 is particularly egregious because it is another self-serving factual refutation of the Complaint's well-pled allegations detailing numerous critical RVP4 manufacturing issues that foreclosed any possibility of a large-scale Savanna RVP4 U.S. launch. *See, e.g.*, ¶¶221-29. On that basis alone, Exhibit 5 is easily stricken. *In re OSI Pharms., Inc. Sec. Litig.*, 2007 WL 9672541, at *5 (E.D.N.Y. Mar. 31, 2007) (refusing to consider conference call transcript because it not referenced in the Complaint and "it is not a proper subject for judicial notice.").

Moreover, Exhibit 5 does not even support the argument on which Defendants rely. DB 22. A fair reading of the statement that Defendants cite within Exhibit 5 shows that it does ***not*** disclose that QO was suffering from "constraints on its manufacturing issues" (nor that Defendants "repeatedly" disclosed that) because that statement begins: "we're very ***encouraged*** by what we see so far …" *See* Exhibit 5 at 4. *See Roth*, 489 F.3d at 511 ("Even assuming that those factual assertions were relevant, they raised issues of fact that should not have been determined at the pleadings stage."); *Cipla USA, Inc. v. Ipsen Biopharmaceuticals, Inc.*, 2024 WL 307699, at \*5 (D. Del. Jan. 26, 2024), *report and recommendation adopted*, 2024 WL 3326824 (D. Del. Feb. 21, 2024) (rejecting request to consider transcript for motion to dismiss where "motion raises a material issue of fact as to the context and interpretation of its representations to analysts and investors on the call.").

Defendants also rely on Exhibit 36, a *Bloomberg News* Press Release, dated November 1, 2023, to defend against the Complaint's allegations that Defendants doubled QO's endemic COVID revenue guidance at the end of 2022, and maintained that guidance for the next year in order to revive the Company's nosediving stock price. DB 8. The Complaint alleges that Defendants' increased COVID guidance misled investors and concealed that, in reality, QO's decline in COVID revenues was not limited to industry-wide declines in testing levels, but was due to QO-specific market share losses that were worsening as the Company doubled its guidance. *See, e.g.,* ¶¶230-280, 296-298. In response, Defendants cite to a late 2023 news release reporting declining COVID revenue (DB 8 (quoting Exhibit 36)). Not only does this defense miss the point—that Defendants' late 2022 doubled endemic COVID guidance was illusory and created a misleading impression of QO COVID testing success—but it creates an improper factual narrative outside the Complaint's allegations. For these reasons, the Court should not consider

9

Exhibit 36 for the truth of the matter asserted. *Roth*, 489 F.3d at 510-11.[2]

Finally, Exhibit 45, a post-Class Period July 31, 2024 earnings call transcript, is cited in support of Defendants' factual argument that QO, post-Class Period, "continued to view Savanna as a competitive product and to invest in its next-generation respiratory and other panels" because QO's new CEO stated in July 2024 that we "expect to enter clinical trials on our respiratory panel later this year, and … our goal is to be in the market with both the respiratory panel and the [STD] panel in 2025." DB 8 (quoting Exhibit 45 at 3). The use of Exhibit 45 is in conflict with the Complaint's allegation that RVP4 suffered post-Class Period from continued delays and bad news, and that as of the Complaint filing on February 7, 2025, "the Company has not announced that it has resubmitted the Savanna RVP4 assay—or any other new Savanna assay—to the FDA for approval." ¶315; *see also* ¶¶310-14. Indeed, Defendants' outdated citation to a July 2024 transcript forecasting a 2025 RVP4 launch is truly misleading, as ***just yesterday***, QO's announced that it "plans to discontinue the Company's Savanna platform development,"[3] lending credence to the accounts of multiple former employees describing how RVP4 had fundamental manufacturability issues leading it to be likened internally to QO's own "Theranos". ¶¶131-36; 191-220.

---

[2] Exhibit 46 is purportedly a "QuidelOrtho Corporation Stock Quote" from February 28, 2020. While Plaintiff does not dispute that QDEL shares closed at $77.24 per share on February 28, 2020, Defendants have failed to authenticate what appears to be a document pulled from the Company's website or at the very least explain where the document was obtained from. *See McFall v. Perrigo Co.*, 2021 WL 2327936, at *3 (C.D. Cal. Apr. 15, 2021); *see also Fortis Corp. Ins., S.A. v. M/V Cielo Del Canada*, 320 F. Supp. 2d 95, 98 (S.D.N.Y. 2004) ("Current websites maintained by the defendant cannot be taken as controlling evidence of the facts that existed[.]").
[3] QuidelOrtho New Releases, *QuidelOrtho Announces Strategy to Accelerate Growth in Molecular Diagnostics* (Jun. 3, 2025), https://ir.quidelortho.com/news/news-release-details/2025/QuidelOrtho-Announces-Strategy-to-Accelerate-Growth-in-Molecular-Diagnostics/default.aspx.

**C.    Defendants Misuse Exhibits 30, 33, 37 and 43 To Improperly Dispute Well-Pled And Well-Sourced Factual Allegations, And They Should Be Stricken**

Defendants introduce a handful of exhibits to argue that the Complaint somehow fabricated or misattributed statements to the wrong speakers. Not so, and Defendants' use of incomplete or inaccurate Exhibits to support these arguments should be rejected and the Exhibits stricken.

For example, the Complaint alleges that Defendants Bryant and Busky made several Misstatements during a November 30, 2023 Evercore ISI HealthCONx Conference. *See* Misstatements 18 (¶321(r)), 35 (¶327(p)), 73 (¶339(y)), 97 (¶344(r)), and 98 (¶344(r)). Defendants submit an incomplete transcript of that conference (Exhibit 37), and based on that incomplete transcript argue that Misstatements 35 and 97 "do not appear in that transcript" and "should be dismissed on this basis alone." DB 18 n.13; *see also* Defendants' Appendix A, arguing that Misstatements 35 and 97 are not contained in the transcript of the conference and that Misstatement 73 is not attributed to Defendant Bryant in the transcript.

Clearly, Plaintiff did not make these statements up out of whole cloth. While unnecessary at the pleading stage, Plaintiff has submitted a true and correct copy of the transcript of the November 30, 2023 Evercore ISI HealthCONx Conference relied on in drafting the Complaint and it, unsurprisingly, contains the alleged Misstatements as attributed. *See* Ormsbee Decl., Exhibit C at 4 (Misstatements 35 & 73), 9 (Misstatement 97).[4]

In another example, Defendants rely on Exhibit 30 to argue that Defendant Busky made Misstatement 30 (¶327(k)), as opposed to Defendant Bryant, and that Misstatement 30 "should be dismissed for the additional reason that Plaintiff incorrectly attributes it to Mr. Bryant." DB

---

[4] Audio recordings of the entire conference are also available online and accessible to the public, which corroborate the accuracy of the Complaint's allegations.

20 n.20; Defendants' Appendix A at 10 n.2. Again, the true and correct copy of the transcript relied upon in drafting the Complaint clearly attributes Misstatement 30 to Bryant. *See* Ormsbee Decl., Exhibit A at 12 (attributing Misstatement 30 to Bryant). Moreover, as both Defendants' Bryant and Busky are Individual Defendants here, the argument itself is likely inconsequential as to QO's liability because the scienter of both Defendants is adequately alleged.

Finally, Defendants improperly rely on Exhibits 33 and 43 to argue that the Complaint incorrectly quotes Misstatements 33 (¶327(n)) and 75 (¶339(aa)), respectively. *See* Defendants' Appendix A at 11 n.3 & 26 n.8. Once again, the true and correct copies of the transcripts relied upon in drafting the Complaint aligns with the Complaint's language. *See* Ormsbee Decl., Exhibit B at 10 & Exhibit D at 3.

The transcripts relied on by Plaintiff are presumptively reliable and accurate and, at the very least, raise a question of fact by calling into question the authenticity and accuracy of Defendants' Exhibits. Defendants' Exhibits 30, 33, 37 and 43 should be stricken.

### D.    Exhibits 3-4, 7, 9-29, 31-32, 34, 35, 38-42, And 44 Should Not Be Considered For The Truth Of The Matters Asserted

The remaining Exhibits submitted by Defendants are incorporated by reference as they are cited, at least once, in the Complaint. However, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018); *see also Zak v. Chelsea Therapeutics, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[W]hen a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs."); *Int. Rate Swaps*, 261 F. Supp. 3d at 481 ("On a motion to dismiss, however, as plaintiffs' case authority reflects, defendants may not use plaintiffs' sources as an archive from which to build what amounts to a factual rebuttal."). While it is

unwieldy and unnecessary to explain why each of the remaining 33 Exhibits are improperly utilized—especially when Defendants make no attempt to explain why the use of any Exhibit is proper at all—Plaintiff describes some exemplars of why the intended use of these Exhibits is improper and they should be excluded.

For example, Defendants cite Exhibits 3 and 12 in the "Factual Background" section of their Motion to downplay the Company's reliance on COVID-19 revenue. DB 4 ("It also enabled Quidel to invest beyond COVID-19, including devoting resources to developing Savanna."); *Id.* at 6 ("Mr. Busky explained during the next earnings call on May 4, 2022, that Quidel was not currently 'forecasting at [sic] significant revenue contribution from our COVID-19 products in the back half of the year.'"). However, the Complaint contains well-pled allegations that QO's ability to sustain its record high revenue levels was in large part dependent on revenues from COVID-19 testing. *See, e.g.*, ¶¶23, 116 (Defendants stating that QO's endemic COVID-19 revenue would be between $200-$400 million). Moreover, Exhibit 3 does not conflict with the Complaint's allegations, as the Company devoted resources to developing Savanna RVP4—a panel that tested for COVID-19. *See* ECF No. 49-3 at 171.

Similarly. Defendants cite Exhibits 7, 33, 35, 36, and 38 in the "Factual Background" section of the Motion in support of their counter narrative that they disclosed the Company's decrease in demand for its COVID-19 tests. DB 5, 7-8. For the reasons explained in connection with Exhibit 36 *supra*, the statements in these documents do not conflict with the Complaint's allegations. Moreover, Defendants misconstrue Bryant's statement in Exhibit 7, which explicitly states that the Company was "seeing demand moderate … commensurate with lower COVID-19 positive cases" as COVID-19 shifted to "an endemic phase." ECF No. 49-7 at 3-4. If anything, this supports the Complaint's allegations concerning Defendants' failure to disclose that QO's

13

decline in COVID-19 revenues was not solely attributable to a decrease in COVID-19 testing generally, but rather the Company's loss of market share. *See, e.g.,* ¶¶230-280, 296-298.[5]

Defendants' contention that Exhibit 38 (a Craig-Hallum analyst report dated December 18, 2023) demonstrates that analysts viewed QO's endemic COVID-19 forecast for 2023 as "spot on" is similarly misplaced. DB 7-8. As alleged in the Complaint, analysts were unaware that the $260 million in non-government related COVID-19 revenue that QO reported for fiscal year 2023 was artificially boosted by Defendants' attempt to flood the market with QO's products. ¶245. Moreover, the Complaint alleges that the Craig-Hallum analysts relied on Defendants Bryant and Busky's representations that QO was set to obtain $200-$400 million in endemic COVID-19 annual revenue (¶125), but were stunned by Defendants' subsequent disclosures. *See* ¶291 ("Analysts at Craig-Hallum downgraded QuidelOrtho shares, noting that "[r]espiratory is still the only thing that matters for this stock" and that: "Q4 came in *as one of the most surprising results we have seen in diagnostics in some time—and not in a pleasant way for shareholders*.").

Further, Defendants cite Exhibits 15, 34, and 35 to support their counter narrative that they were not aware of the FDA's requirements for Savanna RVP4 approval. DB 19.[6] This

---

[5] Defendants' attempted use of Exhibit 27 is inappropriate for the same reasons as those explained *supra* for Exhibit 36. *See* DB 7. Moreover, Exhibit 7 does not demonstrate that QO was capable of achieving $200-$400 million in endemic COVID-19 revenue as Defendants contend. As the Complaint alleges, QO's 2023 reported revenue was inflated by $147 million from one-off government orders that Defendants explicitly excluded from their endemic revenue representations (¶¶110, 117, 296 n.13), and the remaining $260 million in COVID-19 revenue was artificially boosted by Defendants' attempt to flood the market with their products (¶245).

[6] Defendants also cite Exhibit 35 for the proposition that Defendant Bryant disclosed that the Company had high inventory levels. DB at 8. However, a fair reading of Bryant's statements regarding "high inventory levels" is that the Company "[h]istorically" sees higher levels of inventory around Q3. ECF No. 49-35 at 12-13. Moreover, Defendants conveniently omit the rest of Bryant's statements that provide critical context. For example, Bryant states that "I'm hearing that a lot of physicians are actually ordering the combo product, I think it's reasonable to expect that we'd have a bleed off that mimics what we've seen in prior years." *Id.*

14

argument fails because whether Defendants knew *all* of the requirements for FDA approval is irrelevant, as alleged in the Complaint, the FDA required RVP4 to meet a 95% or higher functional level for detectability and accuracy in order to obtain approval, that this 95% sensitivity level was known to QO, and RVP4 was never able to meet this requirement. *See, e.g.*, ¶330.

Defendants also cite Exhibits 19 and 23 to support their counter narrative that "[i]nvestors understood management lacked clarity 'around the timing of Savanna regulatory approval in the U.S.'" DB 6-7. Specifically, Defendants point to Busky's statement in Exhibit 19 (QO's Q3 2022 Earnings Call transcript), whereby QO announced that it was revising its previously assured timeline for the Savanna RVP4 U.S. launch to 2023 because they now believed that a 510(k) application was the "surest pathway" to securing FDA approval. *Id.* Defendants also point to Exhibit 23 (a William Blair analyst report dated December 20, 2022), in which William Blair analysts acknowledged that there was *currently* a lack of "clarity" regarding the timing of the U.S. launch. *Id.* At best, these Exhibits demonstrate that QO management did not *currently* know exactly *when* Savanna RVP4 would obtain FDA approval. The Court should not consider these documents for the purpose of concluding that investors understood that QO management lacked clarity as to when Savanna RVP4 would obtain FDA approval throughout the entire Class Period. As alleged in the Complaint, Defendants subsequently continued to provide investors with clarity as to when Savanna RVP4 would obtain FDA approval. *See, e.g.*, Misstatements 26-27, 32, 36-38 (¶¶327(g)-(h), (m), (q)-(r)).

For example, less than two months after the analyst report in Exhibit 23 was issued, Defendant Bryant told investors that "[w]e're still expecting RVP4 for EUA in April and the 510(k) will be just shortly after that." Misstatement 26 (¶327(g)). In January 2024, Defendant Bryant even more plainly stated: "Well, we're in good shape. And I would commit to being in

15

market before the end of the quarter." Misstatement 36 (¶327(q)).[7]

Likewise, Exhibit 38, a Craig-Hallum analyst report dated December 18, 2023, does not demonstrate that Defendants sufficiently disclosed the crippling issues that plagued Savanna RVP4's performance and the Company's ability to manufacture the panel at a large scale for the purportedly imminent U.S. launch. DB 17-18. At best, this analyst report demonstrates that Craig-Hallum analysts, in particular, were informed of "error codes on instruments" and that there were "some challenges in cartridge manufacturing." Exhibit 38 at 2-3. Tellingly, Defendants do not explain where and when they disclosed such information to the market as a whole. Moreover, a full reading of this analyst report does not contradict the allegations in the Complaint, as Defendants conveniently omitted the following sentence contained within the report: "These issues were considered, by management, to be 'normal' and *have since been resolved*." *Id.* As alleged in the Complaint, the Savanna RVP4 issues related to its performance, and the Company's ability to manufacture the panel at scale, were prevalent throughout the entire Class Period. *See* ¶¶160-290, 357-74.

For the reasons explained herein, the Court should not consider Exhibits 3-4, 7, 9-29, 31-32, 34, 35, 38-42, and 44 for the purposes that Defendants request. *Int. Rate Swaps*, 261 F. Supp. 3d at 481 ("defendants may not use plaintiffs' sources as an archive from which to build what amounts to a factual rebuttal."); *see also Roth*, 489 F.3d at 511 (finding it inappropriate to consider the representations in defendants' filings for the truth of their assertions).

---

[7] For the reasons explained in Plaintiff's Opposition to Defendants' Motion at 9-11, 15-16, 19-20, 23-24, Exhibits 8 and 28 do not provide meaningful cautionary language regarding Defendants' Misstatements concerning: (i) FDA approval for Savanna RVP4 and its highly touted, imminent U.S. launch; and (ii) the Company's endemic COVID-19 annual revenue and related statements concerning COVID revenue.

**E.    The Court Should Strike or Exclude Defendants' Appendix A**

Defendants' attempt to rewrite the Complaint is readily apparent in Defendants' Appendix A, which utilizes the improperly introduced Exhibits to make improper and inaccurate factual arguments that defy the clear allegations of the Complaint. Defendants' Appendix A should be stricken. For example, Defendants added language to the Misstatements that does not appear in the body of the Complaint, and do not bother to even alert the Court to what language was added. Moreover, Defendants lodge the improper arguments discussed above, *supra* Section III.C, in footnotes within Defendants' Appendix A, which should be rejected both on their merits and on the basis that they were raised solely in a footnote.

Plaintiff has submitted its own Appendix A that accurately lists and assigns a Misstatement number to each of the Misstatements, as they are alleged in the Complaint and not as Defendants would like them phrased and attributed.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court strike or exclude the Davis Declaration, the Exhibits attached thereto, and Defendants' Appendix A, in their entirety, and disregard statements or arguments made in Defendants' motion to dismiss in reliance on the Exhibits. In the event that the Court is inclined to consider any of the Exhibits to the Davis Declaration, Plaintiff respectfully requests that the Court decline to use the documents for the purposes requested by Defendants.

DATED: June 4, 2025                     Respectfully submitted,

                                        */s/ Lauren A. Ormsbee*
                                        **LABATON KELLER SUCHAROW LLP**
                                        Lauren A. Ormsbee
                                        Lisa M. Strejlau
                                        Charles J. Stiene
                                        140 Broadway
                                        New York, New York 10005

17

Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lormsbee@labaton.com
lstrejlau@labaton.com
cstiene@labaton.com

*Counsel for Lead Plaintiff and Lead
Counsel for the Proposed Class*

## CERTIFICATE OF COMPLIANCE

I, Lauren A. Ormsbee, hereby certify that this memorandum of law complies with the length restrictions in Local Civil Rule 7.1(c), as modified by § 5(A) of this Court's Individual Practices in Civil Cases.

I further certify that this memorandum of law contains 5,086 words, including any footnotes or endnotes and excluding only those sections of the brief that are exempted under Local Rule 7.1(c) and Your Honor's Individual Practices. In preparing this certificate of compliance, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

_/s/ *Lauren A. Ormsbee*_
Lauren A. Ormsbee