**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE QUIDELORTHO CORPORATION
SECURITIES LITIGATION

No. 24-cv-02804-JAV

<u>ORAL ARGUMENT REQUESTED</u>

---

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S APPENDIX A AND
GLOSSARY**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT...................................................................................................... 3

    A.    Plaintiff's Appendix A and the FE Defined Terms in the Glossary Do Not Add
        Additional Argument .................................................................................. 4

        1.    Plaintiff's Appendix A Contains No Improper Argument......................... 4

        2.    The FE Defined Terms in the Glossary Present No Improper Argument... 8

        3.    Defendants' MTS Lacks Any Legal Support............................................. 9

    B.    Plaintiff's Appendix A and the FE Defined Terms in the Glossary Do Not
        Attempt to Amend the Complaint............................................................. 10

III.   CONCLUSION................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arqit Quantum Inc. Sec. Litig.*,
  774 F. Supp. 3d 505 (E.D.N.Y. 2025) ..........................................................................7

*Curran v. Aetna Life Ins. Co.*,
  2016 WL 3843085 (S.D.N.Y. July 11, 2016) ...............................................................10

*D.P. v. N.Y.C. Dep't of Educ.*,
  2022 WL 103536 (S.D.N.Y. Jan. 10, 2022), *aff'd sub nom. H.C. v. N.Y.C.*
  *Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023) ..............................................................10

*Davis v. Comm'r of Soc. Sec. Admin.*,
  2022 WL 2529057 (D. Ariz. July 7, 2022) .....................................................................9

*Ghorbani v. Pac. Gas & Elec. Co. Grp. Life Ins.*,
  100 F. Supp. 2d 1165 (N.D. Cal. 2000) .........................................................................2

*Hawes v. Argo Blockchain*
  *plc*, 2024 WL 4451967 (S.D.N.Y. Oct. 9, 2024) .........................................................6

*King v. Nat'l Gen. Ins. Co.*,
  2023 WL 8879261 (N.D. Cal. Dec. 22, 2023) ...............................................................9

*Lesser v. TD Bank, N.A.*,
  2020 WL 1943050 (S.D.N.Y. Apr. 23, 2020) ...............................................................11

*McCray v. City of N.Y.*,
  2007 WL 4352748 (S.D.N.Y. Dec. 11, 2007) ...............................................................11

*Pacenza v. IBM Corp.*,
  2007 WL 9817926 (S.D.N.Y. July 26, 2007), *aff'd*, 363 F. App'x 128 (2d Cir.
  2010) .............................................................................................................................10

*Rosado-Acha v. Red Bull Gmbh*,
  2016 WL 3636672 (S.D.N.Y. June 29, 2016) ...............................................................10

*Snellink v. Gulf Res., Inc.*,
  870 F. Supp. 2d 930 (C.D. Cal. 2012) ............................................................................7

*Strougo v. Tivity Health, Inc.*,
  551 F. Supp. 3d 839 (M.D. Tenn. 2021) .........................................................................7

ii

**Other Authorities**

FED. R. CIV. P. 12(f) ..........................................................................................................................3

William Shakespeare, *Hamlet*..........................................................................................................2

Plaintiff submits this opposition to Defendants' Motion to Strike Plaintiff's Appendix A and Glossary (ECF No. 58, "Defendants' MTS"), both of which were submitted with Plaintiff's opposition (ECF No. 50, "MTD Opposition") to Defendants' Motion to Dismiss the Complaint (ECF No. 48 "MTD").[1]

## I.      INTRODUCTION

Defendants, in support of their 35-page MTD, improperly submitted *46* exhibits totaling *722 pages*, and a *36-page* "Defendants' Appendix A" that attempts to recast the Complaint's 104 Misstatements by adding cherry-picked language to the Misstatements and raising arguments incorrectly contesting the accuracy of certain Misstatements. Plaintiff moved to strike or, alternatively, limit the use of those documents (ECF No. 52, "Plaintiff's MTS"), and will respond to Defendants' opposition to Plaintiff's MTS (ECF No. 62) on July 30, 2025. Defendants' actions are an important comparative touchstone to the arguments raised in Defendants' MTS.

In the MTD Opposition, Plaintiff employed two organizational aids to assist the Court in locating allegations relevant to Defendants' legal challenges and to correct the improper additions to the Complaint language contained in Defendants' Appendix A. ***First***, Plaintiff provided its own Appendix A (ECF No. 50-1) that contained the same columns as Defendants' improper Appendix A—with an important difference being that Plaintiff's Appendix A contained only the language from the Complaint and a full citation to each Misstatement's location in the Complaint—and added two reference columns that identified without any argument: (i) the basis and location, by page number, of Defendants' MTD challenges to each Misstatement (*i.e.*, forward-looking

---

[1] Unless otherwise defined, capitalized terms have the meaning ascribed in Lead Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 42) or in the Glossary contained in Plaintiff's MTD Opposition (the "Glossary"). References to the Complaint herein appear as "¶___".

statements, opinion statements, immaterial puffery statements, and not false statements); and (ii) the location of Plaintiff's corresponding responses, by page number, in the MTD Opposition. ***Second***, Plaintiff included a Glossary of Certain Defined Terms in its MTD Opposition that identified many abbreviated and capitalized terms used in the Complaint and the MTD Opposition, including a definition for each of the 21 FEs in the Complaint, who were described by title, tenure, and responsibilities—exactly as they were defined in the Complaint, specifically in ¶¶46-66 of the Complaint. The Glossary also listed, without argument or description, the Complaint paragraphs where each FE's allegations are located. Such organizational aids are appreciated by courts and, indeed, are at times required to be submitted, as described below.

Defendants' MTS is a striking example of projection because defense counsel incorrectly attributes to Plaintiff improper conduct that, in fact, mirrors Defendants' tactics. As Defendants move to strike the entirety of Plaintiff's Appendix A and the FE descriptions in the Glossary, they are defending, in a corresponding brief, the incorporation of 722 pages of exhibits and their Appendix A, which relies liberally on those exhibits in creating an impermissible counter-narrative to the Complaint. *See* ECF No. 62, Defendants' Opposition to Plaintiff's Motion to Strike the Declaration of Colin B. Davis, Exhibits Attached Thereto, and Defendants' Appendix A. Defendants "doth protest too much."[2] Every argument raised by Defendants applies, if at all, to their own actions, while application of these arguments to Plaintiff's non-argumentative Glossary and Plaintiff's Appendix A is merely an attempt to fit a square peg into a round hole.

---

[2] William Shakespeare, *Hamlet*, act III, sc. II. *See, e.g.*, *Ghorbani v. Pac. Gas & Elec. Co. Grp. Life Ins.*, 100 F. Supp. 2d 1165, 1168 (N.D. Cal. 2000) ("To the contrary, the strenuousness with which a defendant objects to a plaintiff's claim might legitimately be regarded as a sign that a case has merit. As Gertrude's observation to Hamlet reveals, suspicions are rightly fueled by one who 'doth protest too much.'").

Specifically, Defendants raise two arguments in support of their MTS, neither of which bears the weight of even the lightest scrutiny. ***First***, Defendants argue that Plaintiff's Appendix A and the FE definitions in the Glossary contain "argument" and therefore are an improper circumvention of the agreed-upon page limitations. Defendants' MTS at 2-4. There is no argument, legal or factual, in the challenged documents. They are neutral and accurate, serving as a reference, not an argumentative tool. Defendants' citation to a remarkably inapposite string of cases in support only proves this point. ***Second***, Defendants argue that the direct and unembellished citations to the Complaint's extensive allegations in the Glossary and Plaintiff's Appendix A somehow serve as an amendment to the Complaint's extensive allegations of securities fraud. *Id*. at 4-5. Since these documents merely reflect and cite to the Complaint, and seek to remove the extraneous arguments and language Defendants attempt to insert in their MTD, exhibits and Appendix A, Plaintiff amends nothing by providing these reference tools.

It is clear why Defendants want to strike Plaintiff's Appendix A and Glossary. They each provide a useful aid for the Court to use in reviewing the Misstatements and the location of the arguments challenging and defending them, and the FE allegations that support them. A fair and unbiased review of the allegations will maximize judicial efficiency. None of Defendants' MTS arguments provide any justification for the exclusion of these materials, and it should be denied in its entirety.

## II.    ARGUMENT

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). As discussed below, submissions such as glossaries and appendices listing the alleged false and misleading statements from the Complaint are traditionally welcomed, if not

3

required, by courts tasked with analyzing complex claims, such as those in securities class actions. Their contents do not meet the Rule 12(f) standard for exclusion.

### A. Plaintiff's Appendix A and the FE Defined Terms in the Glossary Do Not Add Additional Argument

Defendants' claim that Plaintiff's Appendix A and the definitions of FE-1 through FE-21 "attempt to supplement the Opposition with additional argument" and should be stricken as being in excess of the page limits. MTS at 2-4. This argument fails because neither document contains any legal or factual argument.

### 1. Plaintiff's Appendix A Contains No Improper Argument

Appendices containing each of the false and misleading statements alleged in a complaint are increasingly commonplace. Indeed, if Defendants had submitted an appendix that accurately contained the alleged Misstatements, Plaintiff would not have moved to strike it. However, as described in Plaintiff's MTS (and forthcoming reply brief in further support of Plaintiff's MTS, due on July 30, 2025), ***Defendants'*** Appendix A "claims to set forth the 104 Misstatements alleged in the Complaint, but liberally adds extraneous language to the Misstatements throughout, without noting what language was added by Defendants and what was contained in the Complaint, and further raises improper and inaccurate factual arguments within the document based on the Exhibits." Plaintiff's MTS at 1. ***Plaintiff's*** Appendix A provides exactly what it should—the exact language of the Misstatements alleged in the Complaint—a fact Defendants do not dispute.

The truly ironic core of Defendants' MTS is that a plain comparison of Defendants' Appendix A and Plaintiff's Appendix A shows that 5 of the 7 columns are in substance identical, with key differences that support the inclusion of Plaintiff's Appendix A and the striking of Defendants' Appendix A.

4

*First*, as discussed above and in Plaintiff's MTS, Defendants' Appendix A presents each "Alleged Misstatement" as if it were identical to the presentation in the Complaint, but in fact, adds language and raises wholly incorrect arguments about the content of those Misstatements, without even indicating to the Court what text was added by Defendants. Plaintiff's MTS at 11-12, 17. Plaintiff's parallel column titled "False or Misleading Statements and Omissions" contains, in the same exact order as presented in the Complaint (and in Defendants' Appendix A), each Misstatement *as alleged in the Complaint*. Plaintiff notes that for ease of reference, Plaintiff referred to each Misstatement in its Opposition by its "Misstatement #" assigned to it in both Defendants' Appendix A and Plaintiff's Appendix A.[3]

*Second*, while in *Defendants'* Appendix A, the column indicating the Misstatement's location in the Complaint lists only a single paragraph citation, *Plaintiff's* Appendix A cites every location of the Misstatement, as well as every paragraph that explains why the Misstatement was materially false and misleading when made, in the body of the Complaint. That is not "argument"; it is merely completeness. *Compare, e.g.*, Defendants' Appendix A, Misstatement 2 (citing only ¶321(b)) *with* Plaintiff's Appendix A, Misstatement 2 (citing ¶¶7, 91, 321(b), 322-26 & Section IV.F.2). The fact that one Appendix A provides the Court with all Complaint references to each Misstatement, while another Appendix A obfuscates the totality of the Complaint allegations by citing only one of several paragraphs, proves the propriety of Plaintiff's Appendix A and its utility to the Court as a reference aid (and the impropriety of Defendants' Appendix A).

*Third*, Defendants' claim that the two additional columns in Plaintiff's Appendix A that provide relevant page citations to the MTD and the Opposition somehow "makes conclusory legal

---

[3] Should the Court for any reason strike or disregard both Plaintiff's and Defendants' Appendix A, Plaintiff asks that the Court accept the numbering of the Misstatements adopted by both parties for purposes of its analysis of the MTD.

arguments in response to the [MTD], like claiming that certain statements are 'Not Protected Forward-Looking' or 'Not Inactionable Puffery.'" Defendants' MTS at 2. While Plaintiff agrees that **Defendants'** position—that certain Misstatements are forward-looking or puffery (or inactionable opinions or not false and misleading)—is conclusory and legally insufficient, those arguments are made in Defendants' MTD, not by Plaintiff. Plaintiff's Appendix A does nothing more than identify, by page number, where the Court may locate those arguments in the MTD and Opposition. Again, this should not even bear repeating, but this is not "argument" by any definition of that word; it is a reference tool, a bibliography.[4]

*Finally*, Plaintiff's Appendix A responds to footnotes 2-10 in Defendants' Appendix A, where Defendants claim that the language contained in the Complaint for certain Misstatements is inaccurate or not contained in Defendants' version of a conference call statement. *See* Plaintiff's Appendix A, nn. 4-12. Defendants made the statements **exactly** as they were pled in the Complaint. Of course, the Individual Defendants—the makers of the statements—know that they made these statements. Their attempt to present incomplete conference call transcripts to escape liability is dishonest. Plaintiff provided the accurate transcripts to the Court to counter this dishonest argument and can provide audio files of each conference call if requested. *See* Plaintiff's

---

[4] Indeed, Defendants' own cited case backfires against them because it plainly supports Plaintiff's Appendix A and, specifically, the addition of these two columns. In *Hawes v. Argo Blockchain plc*, Judge Colleen McMahon expressed appreciation for the submission of an appendix that "lists each statement identified in the pleading as misleading" (without any indication that the submitting party embellished or added to the statement's alleged language) and "identif[ied] the legal principles on which [Defendants] rely to buttress their claim that the pleading is fatally flawed," including whether the statements were challenged as "forward-looking statements, "puffery," and statements of opinion or belief rather than fact." 2024 WL 4451967, at *1 (S.D.N.Y. Oct. 9, 2024). Judge McMahon went on to "commend [the submitting party] for doing what the court would otherwise have had to do – identify every statement that must be evaluated and the rules allegedly applicable to that evaluation. It is an ideal way to set up a motion to dismiss in a securities fraud case." *Id.*

MTS at 11 n.4 ("Audio recordings of the entire conference are also available online and accessible to the public, which corroborate the accuracy of the Complaint's allegations."). In any event, the proposed counternarrative argued in Defendants' Appendix A is plainly improper at this stage, and Plaintiff's response to it is warranted (although unnecessary). *See, e.g.*, *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 938 (C.D. Cal. 2012) ("Though the accuracy of Plaintiffs' financial data may be disputed, it would be premature to dismiss the case in light of these factual disputes at the pleading stage."); *see also Strougo v. Tivity Health, Inc.*, 551 F. Supp. 3d 839, 848 (M.D. Tenn. 2021) ("whether Defendants actually disclosed certain other information is a fact issue that is premature to address at the motion to dismiss stage.").

Plaintiff's Appendix A is a proper, and often preferred, tool to increase judicial efficiency. *See In re Arqit Quantum Inc. Sec. Litig.*, 774 F. Supp. 3d 505, 523 n. 17 (E.D.N.Y. 2025) (denying defendants' motion to strike plaintiffs' Appendix A because it "does not contain new or additional arguments" and "serves as a convenient summary and reference with respect to the alleged misstatements"). Indeed, some judges in this district and others require that plaintiffs file a similar chart in connection with their opposition to a Rule 12(b)(6) motion to dismiss. For example, Rule 8.G.i. of the Individual Practices in Civil Cases of Southern District of New York Judge Arun Subramanian mandates that, in the context of a motion to dismiss, "the non-moving party must attach a responsive, non-argumentative exhibit to its responsive papers identifying the paragraphs of the complaint that plausibly allege those elements."[5]

---

[5] Judge Arun Subramanian's Individual Practices in Civil Cases, *available at*: https://www.nysd.uscourts.gov/sites/default/files/practice_documents/AS%20Subramanian%20 Civil%20Individual%20Practices_0.pdf. *See also* Judge Yvonne Gonzalez Rogers' Standing Order in Civil Cases, Rule 14 (available at: https://cand.uscourts.gov/wp-content/uploads/judges/gonzalez-rogers-ygr/YGR-Standing-Order-In-Civil-Cases-Updated-03.17.25.pdf) (requiring securities class action plaintiffs file with the Court a chart summarizing

## 2.     The FE Defined Terms in the Glossary Present No Improper Argument

Plaintiff's Complaint contains 446 paragraphs detailing Defendants' fraudulent scheme to mislead investors throughout the Class Period. Out of those 446 paragraphs, over 190 paragraphs include detailed allegations from the accounts of 21 FEs, or former employees, of QuidelOrtho.[6] Defendants' MTD mischaracterizes and disregards the substantive and well-pled FE allegations contained in the Complaint, and Plaintiff, in turn, addressed the FE allegations in its MTD Opposition. As an aid, given the large number of cited former employees, Plaintiff added the definition of each FE to the Glossary of Defined Terms in a manner that is largely identical or derivative of the FE description paragraphs in ¶¶46-66 of the Complaint, and further added citation to each Complaint paragraph with allegations attributable to each witness.

In their MTS, Defendants contend that the Glossary is improperly argumentative. Defendants' MTS at 3-4. It is not. Indeed, the Glossary does not contain argument whatsoever, nor does it contain any new facts or allegations; all of the information contained in each FE definition is taken directly from the Complaint.[7] While Defendants broadly argue without explanation that all 21 FE definitions are "argument," they address only one FE description,

---

the following information from the complaint: (a) each statement alleged to have been false or misleading; (b) the speaker, date, and medium by which the statement was made; (c) the reason(s) the statement was false or misleading when made with specific references to paragraphs in the complaint; and (d) the facts alleged to show that defendant(s) knew the statement was false and/or misleading with specific references to paragraphs in the complaint).

[6] *See* ¶¶9, 11, 16, 20, 46-66, 77, 129-30, 132-36, 138, 140-47, 149, 152-57, 163-90, 193-220, 223-29, 233-50, 252-80, 302, 322-26, 329-32, 334, 338, 340-42, 346-49, 353-54, 359-60, 362-64, 366-72, 377-79, 381.

[7] For example, the Glossary defines FE-1 using the, nearly verbatim, description provided to him in the "Relevant Third Parties" section of the Complaint. *Compare* Opposition at ix (FE-1: "Former Senior Director, Regulatory Affairs from January 2020 through April 2024.") *with* ¶46 ("FE-1 worked at Quidel and then QuidelOrtho from approximately January 2020 through April 2024 in the Company's San Diego location. He served as Senior Director, Regulatory Affairs….").

claiming **not** that Plaintiff added anything outside of the Complaint, but that "Plaintiff pieces together multiple allegations to describe FE-4" and "identified no less than 31 allegations as 'attributable to FE-4.'" Defendants' MTS at 3. Nothing in Plaintiff's definition of FE-4 is argument or not plain language from the face of the Complaint. FE-4 is defined in the Glossary as a "Former employee who was a scientist who held senior level marketing roles from mid-2020 until Fall 2023 and led the EU launch of Savanna RVP4 and drafted Savanna marketing materials." MTD Opposition at ix. The Complaint defines him identically. *See* ¶49 ("FE-4 held various senior level marketing roles from mid-2020 until Fall 2023…. FE-4 led the launch of Savanna RVP4 in Europe and drafted a Savanna product overview and Savanna brochure, both of which were used to market Savanna…."); ¶212 ("FE-4 stated that as a scientist, he knew that Savanna would not get FDA clearance but that if it did, Savanna would eventually get recalled.").

Defendants' stance that defining a former employee in a Glossary as he is defined in the Complaint, and listing where in the Complaint that former employee is mentioned, is disallowed "argument" does not hold up. This is even clearer when taking into account the fact that, as a matter of practice, courts typically find that glossaries are "not generally regarded as an infringement on page limitation rules" because they are a helpful reference tool. *See Davis v. Comm'r of Soc. Sec. Admin.*, 2022 WL 2529057, at *3 (D. Ariz. July 7, 2022) ("Inclusion of a glossary can be helpful … and is not generally regarded as an infringement on page limitation rules."); *see also King v. Nat'l Gen. Ins. Co.*, 2023 WL 8879261, at *6 (N.D. Cal. Dec. 22, 2023) (referencing glossary, filed by plaintiffs as an exhibit, containing a list of witnesses and a summary of their respective backgrounds).

### 3.    Defendants' MTS Lacks Any Legal Support

The weakness of the MTS is obvious when comparing the circumstances presented here to the stricken argumentative information in the handful of cases Defendants chose to cite. In

9

those cases, courts struck (i) a separate 29-page "Deposition Analysis" memorandum arguing that defendants' testimony was contradictory (*Pacenza v. IBM Corp.*, 2007 WL 9817926, at *1 (S.D.N.Y. July 26, 2007), *aff'd*, 363 F. App'x 128 (2d Cir. 2010)); and (ii) a party declaration that contained "brand-new factual allegations not made or even referenced in either of his complaints" (*Rosado-Acha v. Red Bull Gmbh*, 2016 WL 3636672, at *8 (S.D.N.Y. June 29, 2016)). In two other cases, courts did not strike anything, but did caution against the use of a declaration that "offers extensive legal and factual arguments" including several pages of citation to caselaw and argument, which is not applicable here. *See D.P. v. N.Y.C. Dep't of Educ.*, 2022 WL 103536, at *1 n. 1 (S.D.N.Y. Jan. 10, 2022), *aff'd sub nom. H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023); *see also Curran v. Aetna Life Ins. Co.*, 2016 WL 3843085, at *8 (S.D.N.Y. July 11, 2016) (admonishing plaintiff for failing to "include any legal argument in support of her third claim" in her memorandum, and instead, trying to incorporate an attorney declaration to advance factual and legal arguments).

> **B.**    **Plaintiff's Appendix A and the FE Defined Terms in the Glossary Do Not Attempt to Amend the Complaint**

Defendants next state, without explanation, that Plaintiff used Plaintiff's Appendix A and the FE definitions in the Glossary "to connect each challenged statement to the reasons why that statement purportedly is false or misleading, and the FEs whose accounts purportedly support those reasons, in a way not done in the Complaint." Defendants' MTS at 4-5. This is just not correct. The Misstatements and the FE definitions are presented identically as they are in the Complaint.

As explained herein, the Complaint contains ***all*** of the facts and allegations cited in Plaintiff's Appendix A and Glossary. Plaintiffs' Appendix A lists the alleged Misstatements, in the exact order in which they appear in the "Defendants' False and Misleading Statements and

10

Omissions" section of the Complaint. Despite this, Defendants contend that Plaintiff's Appendix A and Glossary constitute an attempt to amend the Complaint. *Id.* This argument is ironic because, as explained *supra*, it is Defendants themselves that first presented an Appendix A, and it was Defendants' Appendix A that: (i) inappropriately rewrote the alleged false and misleading statements and omissions; and (ii) added arguments that erroneously contest the accuracy of misstatements and omissions pled in the Complaint.

Tellingly, Defendants cannot point to a single piece of information that was not alleged in the Complaint or explain how Plaintiff's Appendix A and Glossary purportedly altered those well-pled allegations. Nor can they because both documents merely provide citations to facts and allegations in the Complaint or page citations to legal arguments within each party's respective brief in connection with Defendants' Motion.[8]

## III.    CONCLUSION

Plaintiff submitted its Appendix A and Glossary as a courtesy to the Court and to correct the mischaracterizations of the Complaint's facts and allegations within Defendants' MTD and Defendants' Appendix A. For the reasons explained herein, the Court should deny Defendants' MTS in its entirety.

---

[8] Defendants' case law is readily distinguishable. *See McCray v. City of N.Y.*, 2007 WL 4352748, at \*30 (S.D.N.Y. Dec. 11, 2007) (finding that plaintiffs' memorandum attempted to be more specific in response to defendants' motion to dismiss where the complaint failed to plead claims "with sufficient specificity to put each Defendant on notice of what he or she allegedly did or did not do"); *see also Lesser v. TD Bank, N.A.*, 2020 WL 1943050, at \*11 (S.D.N.Y. Apr. 23, 2020) (plaintiff attempted to make new factual allegations in memorandum of law that were not pled in the complaint).

DATED: July 22, 2025                        Respectfully submitted,

                                            */s/ Lauren A. Ormsbee*
                                            **LABATON KELLER SUCHAROW LLP**
                                            Lauren A. Ormsbee
                                            Lisa M. Strejlau
                                            Charles J. Stiene
                                            140 Broadway
                                            New York, New York 10005
                                            Telephone: (212) 907-0700
                                            Facsimile: (212) 818-0477
                                            lormsbee@labaton.com
                                            lstrejlau@labaton.com
                                            cstiene@labaton.com

                                            *Counsel for Lead Plaintiff and Lead*
                                            *Counsel for the Proposed Class*

## CERTIFICATE OF COMPLIANCE

I, Lauren A. Ormsbee, hereby certify that this memorandum of law complies with the length restrictions in Local Civil Rule 7.1(c).

I further certify that this memorandum of law contains 3,428 words, including any footnotes or endnotes and excluding only those sections of the brief that are exempted under Local Rule 7.1(c) and Your Honor's Individual Practices. In preparing this certificate of compliance, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

*/s/ Lauren A. Ormsbee*
Lauren A. Ormsbee