

**Lauren A. Ormsbee**
**Partner**
**Labaton Keller Sucharow LLP**
140 Broadway
New York, New York 10005
212.907.0864
LOrmsbee@labaton.com

August 22, 2025

**VIA ECF**

The Honorable Jeannette A. Vargas
United States District Court
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 703
New York, NY 10007

Re:    *In re QuidelOrtho Corp. Securities Litigation*, No. 24-cv-02804 (S.D.N.Y.)

Dear Judge Vargas:

We represent Lead Plaintiff in the above-captioned securities class action, which brings claims against Defendant QuidelOrtho Corporation and several of QuidelOrtho's officers  under the Securities Exchange Act of 1934 (the "Exchange Act"). We write to bring to the Court's attention the recent decision issued in *Levon v. CorMedix Inc.*, No. 21-14020 (JXN) (CLW), 2025 WL 2400346, at *1 (D.N.J. Aug. 19, 2025), which bears upon Defendants' pending motion to dismiss (ECF No. 48) and supports the positions Lead Plaintiff submitted in its opposition (ECF No. 50, "Opposition Brief") and in its July 8, 2025 letter submitting supplemental authority (ECF No. 56).[1] A copy of the *CorMedix* opinion is submitted herewith as Ex. A.

In *CorMedix*, defendants sought FDA approval for DefenCath, an antimicrobial catheter lock solution. 2025 WL 2400346, at *1. Throughout the class period, the *CorMedix* defendants assured investors that DefenCath was "on track" for FDA approval and that the company had "adequately addressed" any manufacturing concerns even as delays in approval occurred. *Id.* at *2-5, 10. However, as the *CorMedix* plaintiffs alleged, CorMedix and its officers knew or should

---

[1] Lead Plaintiff's July 8, 2025 supplemental authority letter submitted three opinions, all supportive of Lead Plaintiff's position. Among those three opinions was one issued in the *CorMedix* case on June 30, 2025, which was subsequently withdrawn by that court (and quickly withdrawn as supplemental authority by Lead Plaintiff (*see* ECF No. 66)). The attached *CorMedix* opinion replaces the initial *CorMedix* opinion, reaching the same result. Defendants previously hypothesized that Lead Plaintiff "tactically" filed its supplemental authority prior to the deadline for their reply brief, and questioned the ability for a party to file argumentative supplemental authority. ECF No. 63 at 1. To be clear, each of the three opinions submitted on July 8 were all issued within two weeks of the filing, including the prior *CorMedix* opinion, which had been issued just prior to the start of the July 4 holiday week. Moreover, there is no bar to descriptive supplemental authority within this district or within Your Honor's rules and, unlike with sur-replies, Defendants have every opportunity to respond to this letter, as they previously did.

New York | Delaware | London | Washington, D.C.



August 22, 2025
Page 2

have known from internal accounts and document that the DefenCath manufacturing facility "would never be able to pass an FDA inspection." *Id.* at *2. Indeed, by the end of the Class Period, it was disclosed that DefenCath faced manufacturing challenges and had not received FDA approval, leading to significant investor losses. *Id.* at *2-5.

The *CorMedix* court found the complaint's allegations sufficient to establish both material misrepresentations, scienter, and loss causation, denying defendants' motion to dismiss and rejecting similar falsity and scienter challenges as those made by Defendants in this action. The *CorMedix* decision is directly relevant to at least four key issues before this Court.

***First***, the *CorMedix* court held that statements about "manufacturing readiness" and being "on track" for FDA approval were actionable when the allegations demonstrated that defendants knew or should have known of manufacturing deficiencies and impediments to FDA approval, creating a duty to speak truthfully when discussing those topics with investors. *Id.* at *9-18. The court found that once a company speaks about manufacturing capabilities and FDA approval prospects, it must disclose obstacles that contradict those statements. *Id.* at *9-12. This directly supports Plaintiff's challenges to ***each*** of the QuidelOrtho Defendants' challenged statements, most directly those related to similar representations that Savanna was "on track" and "meets the criteria that the FDA are looking for." *See* ¶¶327(a)-(w), 337(a)-(e), 339(a)-(bb) (Misstatements 20-76); *see also* Complaint §§IV.D, IV.F; Opposition Brief at 12-20.

***Second***, the court rejected the *CorMedix* defendants' safe harbor, opinion, and puffery arguments, all also raised by Defendants here in response to similar Misstatements. The court first rejected the argument that cautionary language protected defendants' statements under the "safe harbor" doctrine, concluding that "***[c]autionary statements are not truly cautionary when the defendant knows that an identified risk has or will occur***." *CorMedix*, 2025 WL 2400346, at *15. The court then rejected defendants' puffery defense, noting that "[c]ontext . . . informs the puffery analysis" and "highly material information cannot be mere puffery," concluding that certain statements (similar to those alleged here) "were not puffery because investors had a basis to and did rely on them." *Id.* at *17. The court also easily disposed of defendants' arguments that the challenged statements were inactionable opinions, finding that the challenged statements "contain 'embedded' falsities and concern a central part of CorMedix's business." *Id.* The Court specifically discussed how statements espousing a "belief" that the company had addressed and satisfied FDA concerns was not an inactionable opinion under the Supreme Court's *Omnicare* opinion, because "[s]uch a statement falls within the third *Omnicare* scenario: it 'reasonably implies untrue facts,'" such as internal reports cautioning of issues that would prevent FDA approval, "and omits appropriate qualifying language." *Id.* at *18. That reasoning and analysis can easily be applied to arguments raised by Defendants. *See* Opposition Brief at 9-12, 15-18, 19-20, 22-24.

***Third***, *CorMedix* supports the sufficiency of Lead Plaintiff's falsity and scienter allegations to the extent they rely on the accounts of former employees with relevant knowledge. In *CorMedix*, the court accepted the information provided by two former employees "as true" because the two "accounts are described with sufficient particularity to support the probability that the confidential



August 22, 2025
Page 3

witnesses possessed the information alleged." 2025 WL 2400346, at *21. Here, the Complaint describes accounts from **21 former employees**, who collectively provide detailed, corroborative accounts of Savanna RVP4's failed European launch, inability to meet FDA criteria, and manufacturing deficiencies, as well as similarly corroborative accounts of the knowing falsity of the COVID revenue statements based on declining sales, the increasing inventory crisis detailed in documents such as the "McKellar Report," and unreachable sales quotas given the market for QuidelOrtho's tests. *See*, *e.g.*, Complaint (ECF No. 42) at Section IV; *see also* Opposition Brief at ix-xi (listing Complaint paragraphs attributable to each respective FE). Notably, Defendants here do not challenge the credibility of a single FE. *See* Opposition Brief at 32.

**Fourth**, *CorMedix* applied the "core operations" doctrine to a pre-revenue product (DefenCath) whose approval by the FDA was deemed "critical" to the company's financial health. *CorMedix*, 2025 WL 2400346, at *23-24. The court held that the core operations doctrine strongly supported a finding of scienter when viewed together with the "entirety" of the complaint's allegations, where executives with significant industry experience made misrepresentations about the company's important "lead product candidate." *Id*. at *1, 23-24. This case is in direct alignment. Here, Defendants described Savanna as "***the most important flagship product in the history of the Company***" and repeatedly highlighted their pharmaceutical expertise while concealing known deficiencies. *See* Opposition Brief at 28-29; Complaint at ¶¶78-88, 357-58.

Both *CorMedix* and this action involve the concealment of manufacturing problems, misrepresentations about FDA readiness, and continued assurances to investors despite knowledge of disqualifying deficiencies in a product vitally important to the company's financial health. The *CorMedix* court's analysis strongly supports the sufficiency of Lead Plaintiff's allegations.

Very truly yours,

Lauren A. Ormsbee

Lauren A. Ormsbee