

**Lauren A. Ormsbee**
**Partner**
**Labaton Keller Sucharow LLP**
140 Broadway
New York, New York 10005
212.907.0864
LOrmsbee@labaton.com

January 30, 2026

**VIA ECF**

The Honorable Jeannette A. Vargas
United States District Court
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 703
New York, NY 10007

Re:    *In re QuidelOrtho Corp. Sec. Litig.*, No. 24-cv-02804-JAV (S.D.N.Y.)

Dear Judge Vargas:

Lead Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund and Teamsters Local 710 Pension Fund ("Lead Plaintiff") respectfully submits as supplemental authorities three decisions pertinent to the Court's consideration of Defendants' pending motion to dismiss (ECF Nos. 47-48). Copies of these decisions are attached as Exhibits A-C. Each of the submitted authorities were issued after Defendants' motion was fully briefed, including the memorandum in opposition submitted by Lead Plaintiff (ECF No. 50, "Opposition Brief"), and after the submission of the supplemental authorities later submitted by Lead Plaintiff (ECF No. 56, as modified by ECF Nos. 66, 69, 71). These decisions further establish the inadequacy of Defendants' motion to dismiss arguments and confirm that Defendants' motion to dismiss should be denied.

### A.    *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 157 (2d Cir. 2025)

In *Abengoa*, the Second Circuit reversed dismissal of a securities fraud class action complaint that cited accounts provided by former employees ("FEs"). The *Abengoa* district court had dismissed the complaint for failure to sufficiently plead falsity and scienter, and in so doing, rejected the allegations based on the accounts of six FEs for varying reasons, including that (i) the FEs were not alleged to have interacted with Abengoa management; (ii) the FEs made allegations concerning "senior management" without defining "who constitutes senior management;" (iii) the FEs made allegations against "superiors" without "providing the names or roles of those 'superiors';" and (iv) one of the FEs had "stopped working at an Abengoa subsidiary seven months before the class period." *Francisco v. Abengoa, S.A.*, 624 F. Supp. 3d 365, 392-94 (S.D.N.Y. 2022).

On appeal, the Second Circuit vacated the dismissal, in part, as to both falsity and scienter, and rejected the district court's rulings as to the FEs, holding instead that "***each***" FE "***readily met***" the standard of "sufficient particularity to support the probability ... [they] would possess the

 New York | Delaware | London | Washington, D.C.



January 30, 2026
Page 2

information alleged." *Abengoa*, 156 F.4th at 164-65. The Court of Appeals credited the FE allegations as showing "widespread and systemic" fraud in support of the federal securities claims. *Id*. at 168-69 (emphasis added in part).

As in *Abengoa*, Defendants in their motion to dismiss here lodge slapdash arguments around the **21 FEs**, each of whom provide detailed accounts in support of the elements of falsity and scienter. The Complaint alleges—and Lead Plaintiff describes in great detail in the Opposition Brief—specific facts and bases sufficient to establish at this pleading stage that each FE readily establishes "sufficient particularity to support the probability . . . [they] would possess the information alleged." *Id.* at 164. *See* Opposition Brief at ix-xi (describing each FE and the location of their referenced allegations in the Complaint); *see also id.* at 8-9, 12-13, 15 n.6, 18-19, 20-21, 25-34. Indeed, Defendants concede, as they must, that several of the FEs, who provided information included in the Complaint, had **direct** contact with the Defendants, while many others reported up to the Individual Defendants in their reporting lines. *Id.* at 33. The Court of Appeals' ruling in *Abengoa* makes clear that these pleadings are more than sufficient, and the same sorts of scattershot arguments as to the reliability of the FEs made by Defendants here likewise fail for the same reasons as in *Abengoa*.

> **B.** ***In re Dentsply Sirona, Inc. Sec. Litig.*, 2026 WL 124581 (S.D.N.Y. Jan. 16, 2026) ("*Dentsply II*"[1])**

In *Dentsply II*, Judge Naomi Reice Buchwald denied, in nearly all parts, defendants' motions to dismiss plaintiff's Exchange Act claims, holding that the complaint adequately alleged: (i) defendants made materially false and misleading statements regarding Dentsply's Byte dental aligner product and business under Rule 10b-5(b); (ii) defendants could be held liable for an independent "scheme liability" claim under Rules 10b-5(a) and (c); and (iii) all but one of the defendants acted with scienter. 2026 WL 124581, at *21. Judge Buchwald's analysis of the Exchange Act elements, as they applied to the claims in *Dentsply II*, is relevant here.

**Falsity**: At the outset, the defendants in *Dentsply II*—same as Defendants here—included a summary chart for the alleged misstatements along with their motions to dismiss. There, the *Dentsply II* court declined to address **any** legal challenges to falsity (including puffery, opinion, and safe harbor) to the extent the defendants did not affirmatively raise the challenged statement in their brief and instead relied on the challenges cited in passing in their chart. *See id.* at *9 (citing *Dentsply I*, 732 F. Supp. 3d at 315). Here, Defendants make similar passing and unsubstantiated legal challenges to multiple Misstatements by listing the paragraph numbers in a footnote without any discussion, and the Court should follow the *Dentsply II* lead in simply rejecting these improper

---

[1] Lead Plaintiff cites to an opinion addressing separate Exchange Act claims against the same corporate defendant in its Opposition Brief (defined above) (*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 316 (S.D.N.Y. 2024)) ("*Dentsply I*," herein), which is why the submitted supplemental authority is referred to herein as "*Dentsply II*".



January 30, 2026
Page 3

challenges. *See* Opposition Brief at 9, 11, 17, 19, 24; ECF 50-1, n.2 (noting with an asterisk each challenge made by reference to a paragraph number only, without discussion of the text of the Misstatement).

Next, the *Dentsply II* court's analysis of the defendants' materiality challenges applies equally here. *See Dentsply II*, 2026 WL 124581, at *9-13. For example, the *Dentsply II* court rejected several puffery/materiality challenges on the basis that, while in certain circumstances the statement could be immaterial, examining those statements in the context in which they were made, *i.e.*, in response to a direct analyst question, established materiality. *See id.* at *12. Likewise here, Defendants' arguments challenging numerous statements as immaterial improperly ignores the specific context in which those statements were made—such as in direct response to analyst inquiries—and which, when read in their full context, establishes their materiality to investors. *See* Opposition Brief at 11, 16-17, 19-20, 23-24.

Finally, the *Dentsply II* court rejected the defendants' arguments that several of their statements should be considered to be inactionable "opinion" statements. Specifically, the court ruled that even statements including certain words, such as "'I think'. . . or a similar phrase, does not transform the statements into opinions," in part because each "opinion" contained "embedded statements of fact" that did not "align[] with information available" to defendants. *Dentsply II*, 2026 WL 124581, at *12-13. Defendants' challenges that statements here are nonactionable "opinions" fail for the same reasons: while many are not fashioned as opinions at all, even as to Defendants' statements couched in language such as "we believe," the statements alleged by Plaintiff are nonetheless actionable with respect to the embedded statements of fact within those statements, which were contrary to the alleged information available to Defendants. *See* Opposition Brief at 11-12, 17-18, 19-20, 23-24.

**Scheme Liability**. Judge Buchwald held that plaintiffs adequately alleged scheme liability, finding that such liability could "arise out of the same set of facts" alleging both misrepresentations as well as "a deceptive scheme or course of conduct that went beyond the misrepresentations." *Dentsply II*, 2026 WL 124581, at *20. In *Dentsply II*, the scheme included the concealment of injuries from the FDA, as well as the use of non-disclosure agreements to silence employees, lobbying the government, and providing inaccurate information to customers. *Id.* This is relevant to this action where Lead Plaintiff alleges in a similar fashion that Defendants' deceptive scheme included, among other things, (i) "misrepresenting and concealing negative feedback, customer complaints and device failures;" (ii) dismantling the Savanna team to hide their concerns and product issues; and (iii) submitting Savanna to the FDA without remediating existential issues with the product. *See* Complaint, ¶429.

**Scienter**. Finally, after holistically evaluating plaintiffs' scienter allegations, the *Dentsply II* court ruled that scienter was sufficiently pled as to all but one defendant. 2026 WL 124581, at *14-20. For example, the *Dentsply II* court found that the complaint sufficiently pled "motive and opportunity" to commit fraud because: (i) the "Individual Defendants' bonuses were tied to Dentsply's EPS" and other similar metrics; and (ii) management had an "incentive to conceal"



January 30, 2026
Page 4

their customers' injuries associated with the Byte product to "delay the day of reckoning." *Id.* at *15. The *Dentsply II* court also rejected the defendants' challenges to the reliability of the accounts of eight former employee allegations based on quibbles as to the length of the FEs' tenures and/or the FEs' seniority at the company (*id.* at *15-17). To the contrary, the court specifically rejected these challenges, credited the information from the FEs, and held that the FE accounts sufficiently demonstrated that the defendants had "access to contrary facts," even where the "specific" contents of those reports were not alleged or where plaintiffs' failed to allege that the defendants "actually viewed [the] specific document[.]" *Id.* at *16-17. Finally, the *Dentsply II* court found that the departure of multiple executives around the time of the alleged corrective disclosures "significantly bolsters the inference of scienter." *Id.* at *20.

In each regard, *Dentsply II* aligns directly with Lead Plaintiff's particularized scienter allegations here. As explained in Lead Plaintiff's Opposition Brief, the Complaint: (i) alleges that bonuses were tied to achieving "certain Savanna launch targets," which motivated the unrealistic sales pressure and "top-down mandate" regarding Savanna's premature launch (Opposition Brief at 29, n.17); (ii) alleges that Defendants doubled QuidelOrtho's endemic COVID revenue estimate to "staunch a rapidly falling stock price" despite negative sales figures, inventory levels, and known trends (*id.* at 30-34); (iii) contains the accounts of *21* former employees with direct knowledge sufficient to demonstrate Defendants' knowledge of, or access to, information that contradicted their public statements (*id.* at 25-34); and (iv) alleges that the "timing and circumstances" of Defendants Bryant, Bujarski, and Iskra's terminations strongly support an inference of scienter (*id.* at 31-32). Here, as in *Dentsply II*, these allegations readily suffice.

### C.    *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2026 WL 100576 (S.D.N.Y. Jan. 14, 2026) ("*Stadium Cap. II*"[2])

In *Stadium Cap. II*, Judge Arun Subramanian granted in relevant part the plaintiff's motion for summary judgment on the element of falsity in a case involving misstatements through which "defendants misled investors by reassuring them that demand for the [defendant's COVID-19 test] remained strong and by suspending their quarterly revenue guidance, citing an inability to accurately forecast sales when in reality defendants tracked demand daily and were already aware sales had plummeted." 2026 WL 100576, at *2. The *Stadium Cap. II* court rejected the defendants' falsity challenges that blamed their misstatements on "the volatility of the COVID-19 testing market and the difficulty in providing precise revenue projections" because such arguments "sidestep the key point: CoDx experienced a steep decline in demand for its flagship product but withheld that information from investors." *Id.* at *3-4.

Similarly, Defendants argue erroneously that their statements were not false and misleading because they purportedly warned investors of the challenges in estimating COVID-19-

---

[2] Lead Plaintiff cites to the motion to dismiss opinion in the same action in its Opposition Brief at 25 & 26, which is why the supplemental authority is referred to herein as "*Stadium Cap. II*".



January 30, 2026
Page 5

related trends. *See* Opposition Brief at 22. For the reasons explained in the Opposition Brief and at center in both *Stadium Cap.* opinions, these arguments also "sidestep the key point" because Defendants doubled their assessment of annual COVID-19 revenue overnight (from $150-$200 million to $200-$400 million), despite internal reports of materially declining sales. *Id.* at 20. These allegations, together with the Complaint's FE allegations regarding Defendants' awareness of negative sales figures, inventory levels, and known trends, more than suffice to allege falsity at this motion to dismiss stage. *See id.* at 20-24.

We thank the Court for its attention to this matter.

Respectfully submitted,

Lauren A. Ormsbee