**GIBSON DUNN**

Colin B. Davis
Partner
T: +1 949.451.3993
M: +1 949.431.3916
cdavis@gibsondunn.com

February 6, 2026

The Honorable Jeannette A. Vargas
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 703
New York, New York 10007

Re:     *In re QuidelOrtho Corp. Securities Litigation*, No. 24-cv-02804 (S.D.N.Y.)

Dear Judge Vargas:

Defendants in the above-referenced matter respectfully submit this letter in response to Lead Plaintiff's January 30, 2026 notice of "supplemental authority" concerning Defendants' pending motion to dismiss. *See* ECF No. 74 (the "Letter").

In its fourth notice of supplemental authority since the motion to dismiss briefing concluded in July, Lead Plaintiff asks the Court to consider three cases that are factually and procedurally inapposite—or, at most, provide additional support for *Defendants*' arguments.[1]

First, Lead Plaintiff directs the Court to *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 169 (2d Cir. 2025), but that decision only underscores the deficiencies in Lead Plaintiff's Complaint. According to Lead Plaintiff, *Abengoa* supports the Complaint's reliance on second-hand speculation about Defendants' alleged knowledge, drawn largely from low-level confidential witnesses. Letter at 1. *Abengoa*, however, underscores—not relaxes—the need for allegations from confidential witnesses to be pleaded with particularity and independently corroborated, and for the sources to be evaluated for whether they were positioned to know the information attributed to them. *Abengoa*, 156 F.4th at 160, 164–66, 169–70; *see also* ECF No. 48 (the "Motion" or "Mot.") at 25 (quoting *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 154 (S.D.N.Y. 2023) (enumerating factors courts must consider when determining the weight to afford facts attributed to unidentified confidential witnesses)).

In *Abengoa*, the Second Circuit held that the district court erred in disregarding confidential witness allegations describing a widespread, systemic accounting scheme, where those allegations were corroborated by other witness accounts, an independent investigation into the allegedly fraudulent activity, and filings in related proceedings. 156 F.4th at 161, 170. The sources there included a Director of Human Resources who received complaints during exit interviews from employees ordered to participate in the alleged fraud, as well as other employees directly involved in

---

[1] Lead Plaintiff also again disregards the page limit in Rule 3.A of the Court's Individual Rules and Practices in Civil Cases.

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive Suite 1200  |  Irvine, CA 92612-4412  |  T: 949.451.3800  |  F: 949.451.4220  |  gibsondunn.com

**GIBSON DUNN**

February 6, 2026
Page 2

financial reporting and accounting who confirmed the existence of parallel recordkeeping for external auditors. *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 303–06 (S.D.N.Y. 2021), *aff'd in part sub nom. Sherman v. Abengoa, S.A.*, 156 F.4th 152 (2d Cir. 2025). Here, by contrast, the vast majority of confidential witnesses had no direct contact with Defendants or QuidelOrtho's senior leadership or were lower-level sales personnel unlikely to possess the information they claim to know, and the Complaint's allegations about them are not tethered to any specific time. Mot. at 24–28.

Second, Lead Plaintiff overstates the significance of *In re Dentsply Sirona, Inc. Sec. Litig.* (*Dentsply II*), No. 24 CIV. 9083 (NRB), 2026 WL 124581 (S.D.N.Y. Jan. 16, 2026). Lead Plaintiff first asks that this Court disregard Defendants' arguments because, in *Dentsply II*, Judge Buchwald limited her analysis to statements specifically addressed in the briefing, rather than those referenced only in the defendants' charts. *See* Defendants' Challenged Statements Charts in Support of Motion to Dismiss, *Dentsply II*, No. 24 CIV. 9083 (NRB), ECF Nos. 70-19, 77-1 (S.D.N.Y. July 8, 2025) (attaching charts discussing 10–21 of the 56 total challenged statements). But here, Defendants did not rely on charts in lieu of argument; Defendants provided a chart that organized 104 statements across a nearly 200-page complaint, and Defendants fully briefed the categories of statements at issue, with references to each challenged statement. *See* Mot. 11–24. Indeed, Lead Plaintiff acknowledges that Defendants fully addressed the challenged statements in their briefing. Letter at 2–3. *Dentsply II* does not suggest courts should disregard merits arguments that are actually briefed. Defendants' approach also is particularly appropriate because Lead Plaintiff challenges nearly twice as many statements—and filed a complaint nearly fifty pages longer—than the plaintiffs in *Dentsply II*. *See* Mot. 17 n.11.

Lead Plaintiff also insists that *Dentsply II* should inform the Court's materiality analysis, but the decision merely reiterates settled principles: context matters, opinions are actionable only if not genuinely held, and generic "puffery" may be actionable only where it "contain[s] [an] embedded statement[] of fact" that does not "align[] with information available" to defendants at the time. *Dentsply II*, 2026 WL 124581, at *12. Those principles are irrelevant here. As explained in the Motion, the challenged statements either were not false when made or constituted classic, nonactionable puffery—statements "too general to cause a reasonable investor to rely upon them." *Id.* at *15; *see, e.g.*, Mot. at 15–23 (discussing statements regarding "very positive customer feedback" and "receiving some really nice feedback").

Nor does *Dentsply II* suggest that executive departures, standing alone, support scienter. Rather, in that case, the court found scienter adequately pleaded based on a combination of allegations regarding the defendants' access to information showing thousands of unreported patient injuries, their personal review of injury reports, their public representations of operational expertise, and their financial incentives to conceal the alleged fraud. *Dentsply II*, 2026 WL 124581, at *19–20.

**GIBSON DUNN**

*Dentsply II* also reaffirmed familiar pleading standards under Rule 9(b) and the PSLRA requiring plaintiffs to tie alleged falsity to specific speakers, timing, and context. Lead Plaintiff has failed to satisfy those requirements here, instead choosing to rely on generalized "negative feedback" untethered from any specific speaker or challenged statement.

       *Dentsply II* also confirms that scheme liability requires plaintiffs to allege a distinct course of deceptive conduct that operates separately from any alleged misleading statements or omissions. *Id.* at *20. Lead Plaintiff alleges a "scheme" here that simply repackages the same alleged misstatements and omissions without identifying separate manipulative acts, as Defendants' Motion explains. *See* Mot. at 34–35; ECF No. 59 (Defendants' Reply) at 15 (pressing this distinction).

       Finally, Lead Plaintiff's reliance on *Stadium Capital v. Co-Diagnostics*, No. 22-CV-6978 (AS), 2026 WL 100576 (S.D.N.Y. Jan. 14, 2026), is misplaced. Critically, *Stadium Capital* involved cross-motions for *summary judgment* following discovery. *Id.* at *4. There, the court relied on record evidence showing the defendants tracked real-time sales data directly contradicting their public statements. *Id.* at *3–4. The court also expressly reserved scienter for the jury. *Id.* at *6. *Stadium Capital* does not say anything about the sufficiency of the pleadings, much less suggest that generalized allegations of internal awareness or business headwinds suffice to plead falsity or scienter under the PSLRA.

       At bottom, the Letter continues Lead Plaintiff's practice of invoking inapposite authorities and overstating their holdings. As with Lead Plaintiff's prior letters, none of the cited cases remedy the Complaint's failure to allege that any Defendant possessed contradictory information at the time of any specific statement or convert optimistic or out-of-context statements into actionable fraud. Further, the cited cases rely on allegations of pervasive schemes corroborated by independent investigative findings or detailed accounts of specific executives expressly directing misconduct, none of which are present here. Lead Plaintiff still has not identified with particularity what any speaker knew, when they knew it, and how that contemporaneous knowledge rendered specific statements false when made.

       For these reasons, Lead Plaintiff's supplemental authorities provide no basis to deny Defendants' motion to dismiss. The Court should grant Defendants' motion to dismiss for the reasons stated in their briefing and prior letters.

       Respectfully submitted,

Colin B. Davis

cc: All Counsel of Record (*via ECF*)